COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
LINH K. NGUYEN (305737)
(lknguyen@cooley.com
MATTHEW D. MARTINEZ (333932)
(mmartinez@cooley.com)
10265 Science Center Drive
San Diego, California 92121
Telephone:  +1 858 550 6000
Facsimile:  +1 858 550 6420

NICHOLAS ORR (334142)
(norr@cooley.com)
355 S. Grand Avenue
Los Angeles, California 90071
Telephone:  +1 213 561 3250
Facsimile:  +1 213 561 3244

SARAH M. LIGHTDALE (*pro hac vice*)
(slightdale@cooley.com)
ERINMA E. MAN (330543)
(eman@cooley.com)
55 Hudson Yards
New York, New York 10001
Telephone:  +1 212 479 6000
Facsimile:  +1 212 479 5275

Attorneys for Defendant
EHang Holdings Limited

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMIEN PUJO, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EHANG HOLDINGS LIMITED, HUAZHI HU, CONOR CHIA-HUNG YANG, RICHARD JIAN LIU, and XIN FANG<br><br>Defendants. | Case No. 2:23-cv-10165-MWC<br><br>**REPLY IN SUPPORT OF DEFENDANT EHANG HOLDINGS LIMITED'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**<br><br>Hearing:  March 28, 2025<br>Time:  1:30 p.m.<br>Dept:  Courtroom 6A<br>Judge:  Hon. Michelle Williams |

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    THE AC FAILS TO PLEAD FALSITY ...........................................................2

    A.    Plaintiff Cannot Rely on the Hindenburg Report or the FEs .................2

    B.    Plaintiff Concedes Many Challenged Statements Are Inactionable .....................................................................................4

    C.    Plaintiff Did Not Plead the Prestige Preorder Was Exaggerated ..........4

    D.    Plaintiff Did Not Plead the UT Preorder Was Canceled ......................5

III.    THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER .......................................................................................................7

IV.    THE AC FAILS TO PLEAD LOS CAUSATION .......................................11

V.    CONCLUSION ..............................................................................................12

COOLEY LLP
ATTORNEYS AT LAW
NEW YORK

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abe v. AFCH*,
2022 WL 159728 (C.D. Cal. Jan. 18, 2022).......................................................2

*Bajjuri v. Raytheon Techs.*,
2023 U.S. Dist. LEXIS 92114 (D. Ariz. May 25, 2023)...................................12

*In re Bare Escentuals Sec. Litig.*,
745 F.Supp.2d 1052 (N.D. Cal. 2010)...............................................................4

*Berson v. Applied Signal Technology*
527 F.3d 982, 984 (9th Cir. 2008) ....................................................................8

*Borteanu v. Nikola*,
2023 WL 11017679 (D. Ariz. Dec. 8, 2023). ..................................................11

*In re BP plc Sec. Litig.*,
843 F.Supp.2d 712 (S.D. Tex. 2012)..................................................................6

*In re Cloudera*,
121 F.4th 1180 (9th Cir. 2024) ..........................................................................4

*Costabile v. Natus Medical*,
293 F.Supp.3d 994 (N.D. Cal. 2018)..................................................................5

*In re DraftKings Sec. Litig.*,
650 F.Supp.3d 120 (S.D.N.Y. 2023) ..................................................................2

*In re EHang Holdings Securities Litigation*,
646 F.Supp.3d 443 (S.D.N.Y. 2022) ...........................................................11, 12

*Espy v. J2 Global*,
99 F.4th 527 (9th Cir. 2024)........................................................................11, 12

*Farhar v. Ontrak*,
714 F.Supp.3d 1198 (C.D. Cal. 2024)............................................................3, 7

*Garcia v. J2 Global*,
2021 WL 1558331 (C.D. Cal. Mar. 5, 2021) .....................................................7

COOLEY LLP
ATTORNEYS AT LAW
NEW YORK

**REPLY ISO MOTION TO DISMISS
2:23-CV-10165-MWC (DFMx)**

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*In re Genius Brands International Securities Litigation*,
97 F.4th 1171, (9th Cir. 2024) ..................................................................... 11

*Glazer Capital Management v. Magistri*,
549 F.3d 736 (9th Cir. 2008) ........................................................................ 7

*Hamano v. Activision Blizzard*,
2019 WL 7882076 (C.D. Cal. Oct. 17, 2019) ............................................... 6

*Hershewe v. JOYY*,
2023 WL 3316328 (9th Cir. May 9, 2023) .................................................... 2

*In re InvenSense Sec. Litig.*,
2017 WL 11673462 (N.D. Cal. Apr. 12, 2017) ............................................. 3

*Lea v. TAL Education Group*,
837 F. App'x 20 (2d Cir. 2020) .................................................................... 12

*In re McKesson HBOC Securities Litigation*,
126 F.Supp.2d 1248 (N.D. Cal. 2000).......................................................... 3

*Mendoza v. HF Foods Group*,
2021 WL 3772850 (C.D. Cal. Aug. 25, 2021) .............................................. 8

*Metzler Inv. GMBH v. Corinthian Colleges*,
540 F.3d 1049 (9th Cir. 2008) ................................................................. 7, 10

*In re Mullen Automotive Securities Litigation*,
2023 WL 812547 (C.D. Cal. Sept. 28 2023) ................................................ 12

*Ng v. Berkeley Lights*,
2024 WL 695699 (N.D. Cal. Feb. 20, 2024).................................................. 2

*Nguyen v. Endologix*,
962 F.3d 405 (9th Cir. 2020) ........................................................................ 7

*Nozak v. N. Dynasty Mins.*,
804 F. App'x 732 (9th Cir. 2020)................................................................... 9

*Oregon Public Employees Retirement Fund v. Apollo Group*,
774 F.3d 598 (9th Cir. 2014) ....................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW
NEW YORK

iii

**REPLY ISO MOTION TO DISMISS**
**2:23-CV-10165-MWC (DFMx)**

**TABLE OF AUTHORITIES**
**(Continued)**

|  | **Page(s)** |
|---|---|

*In re Overstock Securities Litigation*,
  2021 WL 4267920 (D. Utah Sept. 20, 2021) ....................................................... 10

*Petrie v. Electronic Game Card*,
  2011 WL 13131246 (C.D. Cal. May 26, 2011)........................................................9

*In re PharmaCielo Sec. Litig.*,
  2021 WL 4459756 (C.D. Cal. Apr. 16, 2021)..........................................................5

*Prodanova v. H.C. Wainwright & Co.*,
  993 F.3d 1097 (9th Cir. 2021) ................................................................................7

*In re Quality Systems Securities Litigation*,
  865 F.3d 1130 (9th Cir. 2017) ................................................................................4

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) ..................................................................................9

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ..................................................................................2

*Ryan v. FIGS*,
  2025 WL 71727 (C.D. Cal. Jan. 10, 2025)..............................................................3

*S. Ferry LP, No. 2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ..................................................................................8

*In re Sentinelone Sec. Litig.*,
  2024 WL 3297150 (N.D. Cal. July 2, 2024) .......................................................9, 10

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ................................................................................5

*In re Wet Seal Sec. Litig.*,
  518 F.Supp.2d 1148 (C.D. Cal. 2007)......................................................................4

*Wilamowsky v. Take-Two Interactive Software*,
  818 F.Supp.2d 744 (S.D.N.Y. 2011) .....................................................................12

*Wochos v. Tesla*,
  985 F.3d 1180 (9th Cir. 2021) ...............................................................................12

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*In re Zillow Group Sec. Litig.*,
   2019 WL 1755293 (W.D. Wash. Apr. 19, 2019) .................................................... 4

*Zucco Partners v. Digimarc*,
   552 F.3d 981 (9th Cir. 2009) ........................................................................... 3

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| **AAV** | Autonomous aerial vehicle |
| **AC** | Amended Class Action Complaint for Violations of the Federal Securities Laws (Dkt. 41) |
| | References to paragraphs contained in the AC |
| **Class Period** | March 29, 2022, through November 6, 2023 |
| **CW** | Confidential witness |
| **Defendants** | EHang, Huazhi Hu, Conor Chia-Hung Yang, Richard Jian Liu, Xin Fang |
| **EHang** | EHang Holdings Limited |
| **FE** | Former employee |
| **FE1** | Alleged flight test engineer at EHang from April 2020 through May 2023, located in the Guangzhou office (¶37) |
| **FE2** | Alleged assembly test engineer at EHang between June 2021 to October 2023, located in the Guangzhou office (¶57) |
| **Hindenburg Report (or "Report")** | Hindenburg Research report titled *EHang: Hollow Order Book and Fake Sales Make This China-Based eVTOL Company Last In Line For Takeoff*, dated November 7, 2023 |
| **Motion or Mot.** | Defendant EHang Holdings Memorandum of Points and Authorities in Support of Defendant EHang Holdings Limited's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 47-1) |
| **Opposition or Opp.** | Plaintiff's Opposition to the Motion (Dkt. 55) |
| **Prestige** | Prestige Aviation |
| **Prestige Corp.** | Prestige Corporation |
| **PSLRA** | Private Securities Litigation Reform Act of 1995 |

Cooley LLP
Attorneys at Law
New York

vi

| **Robinson** | Robinson Helicopter Company |
| **UAM** | Urban Air Mobility |
| **UT** | United Therapeutics Corporation |

COOLEY LLP
ATTORNEYS AT LAW
NEW YORK

**REPLY ISO MOTION TO DISMISS**
**2:23-CV-10165-MWC (DFMx)**

## I.    INTRODUCTION

An unreliable report from a now-shuttered short-seller.[1] Two anonymous former engineers offering rumors about customers. Speculation. That is all Plaintiff has. The PSLRA demands more, and the Court should dismiss.

Plaintiff's Opposition only underscores the AC's flaws. It leans heavily on the Hindenburg Report, even though courts routinely reject uncorroborated, anonymously sourced short-seller reports as inherently unreliable. It then tries to prop up that Report with the two FEs—neither of whom worked in sales, has personal knowledge about EHang's preorders, or even agrees with Hindenburg's claims. One heard rumors from unidentified salespeople. The other was unaware of meetings he had no reason to know about in the first place. And neither interacted with an Individual Defendant—ever. That does not come close to pleading securities fraud.

These problems cut across Plaintiff's entire case. The AC does not plead falsity because it relies on speculation and hearsay, instead of particularized facts. It barely even attempts to plead scienter—Plaintiff concedes the Individual Defendants had no motive to deceive, and cannot identify a single factual allegation in the AC about what any Defendant knew at any time. As for loss causation, controlling Ninth Circuit law confirms that an uncorroborated report written by an anonymous short-seller that disclaims its own accuracy and is premised on publicly available and easily digestible information is simply not a corrective disclosure.

Plaintiff cannot manufacture a securities fraud claim by treating speculation as fact. The PSLRA exists to prevent exactly this kind of case—one built on unreliable sources and rumor. The AC does not plead falsity, scienter, or loss causation. The Court should dismiss it.

---

[1] In the face of multiple investigations by foreign regulatory agencies, Hindenburg Research shut down earlier this year. (https://www.reuters.com/business/retail-consumer/polands-lpp-says-police-are-investigating-hindenburg-research-2024-06-20/; https://www.business-standard.com/markets/news/sebi-issues-showcause-notices-to-hindenburg-research-five-others-124070200849_1.html; https://www.institutionalinvestor.com/article/2eamph0fbamchddgh2sxs/hedge-funds/famed-short-seller-hindenburg-research-is-closing-shop.)

## II.    THE AC FAILS TO PLEAD FALSITY[2]

### A.    Plaintiff Cannot Rely on the Hindenburg Report or the FEs

Plaintiff's challenges to EHang's statements about some of its customer preorders rest on an unreliable short-seller report and two FEs with no firsthand knowledge. None of this approaches the PSLRA's exacting standards.[3]

The Hindenburg Report is an uncorroborated, anonymously sourced hit piece by a short-seller with a financial stake in tanking EHang's stock. Courts routinely reject such reports as inherently unreliable. *E.g.*, *Hershewe v. Joyy*, 2023 WL 3316328, at *1 (9th Cir. May 9, 2023) (affirming district court's refusal to consider uncorroborated and unsubstantiated short-seller report); *Ng v. Berkeley Lights*, 2024 WL 695699, at *10 (N.D. Cal. Feb. 20, 2024) (disregarding uncorroborated short-seller report); *In re DraftKings Sec. Litig.*, 650 F.Supp.3d 120, 155 (S.D.N.Y. 2023) (same); Mot. 12-15.[4] Here, Hindenburg's claim that EHang's customer UT had canceled a preorder hinges on sentence fragments attributed to a "former EHang employee" about whom Plaintiff does not pretend to know anything, (Ex. 27 at 15-16)—not his or her name, position, tenure, responsibilities, or basis for knowledge. *See Ng*, 2024 WL 695699, at *10 (rejecting short-seller allegations because "[P]laintiff[']s counsel . . . does not even know the source's name, position, or other attributes tending to bear on the source's credibility."); *DraftKings*, 650 F.Supp.3d at 154-55 (S.D.N.Y. 2023) (same); Mot. 14. Defendants' Motion also explained that

---

[2] Plaintiff argues the AC is not a puzzle pleading because he only challenges statements that directly mentioned the Prestige and UT preorders. (Opp. 13.) But virtually all the AC's paragraphs with challenged statements contain *other* statements and the AC does not specify which are challenged (except in ¶74). (Mot. 12 n.8.) For example, ¶68 alleges falsity of a statement that "growing market demand has formed a solid foundation," and ¶77 alleges falsity of a statement that EHang "saw growing AAV demand from broader Asian markets." Plaintiff now seeks to back away from those allegations, but Plaintiff cannot rewrite his scattershot pleading through his Opposition. *See Abe v. AFCH*, 2022 WL 159728, at *5 (C.D. Cal. Jan. 18, 2022).

[3] The AC is subject to the "***heightened*** pleading requirements of the [PSLRA]," which "are an ***unusual deviation*** from the usually lenient requirements of federal rules pleading." *Ronconi v. Larkin*, 253 F.3d 423, 437 (9th Cir. 2001).

[4] Unless otherwise noted, all emphasis is added and all internal quotation marks, ellipses, brackets, and citations are omitted.

Hindenburg's efforts to cast doubt on EHang's customer Prestige are speculative, which is insufficient. *In re InvenSense Sec. Litig.*, 2017 WL 11673462, at *2 (N.D. Cal. Apr. 12, 2017) ("[T]he speculations of some journalists and analysts along the same lines as plaintiff do not make them useful 'sources' for plaintiff's claims."); Mot. 13-14. Plaintiff has no rejoinder. *See Farhar v. Ontrak*, 714 F.Supp.3d 1198, 1209 (C.D. Cal. 2024) (plaintiff's failure to address defendants' arguments is "a sufficient basis to dismiss his claim"). And even Hindenburg disclaimed the accuracy of its findings. (Ex. 27 at 30.)

The FEs do not salvage the Hindenburg Report. (*See* Opp. 12)

FE1, who had ***no role*** in sales, is unreliable as a matter of law. His claim that Prestige preordered 12 AAVs is based entirely on hearsay—rumors he heard from unidentified salespeople.[5] (¶41.) ***So, Plaintiff is not so much relying on FE1 as he is on these unknown third parties, about whom the AC alleges nothing***. Courts reject CWs that fail to specify who provided them information, when it was given, and how the CW was in a position to evaluate it. *E.g.*, *Ryan v. FIGS*, 2025 WL 71727, at *8 (C.D. Cal. Jan. 10, 2025) (CW was unreliable because his statements were "based on hearsay" and "Plaintiffs fail to show how [he] was positioned to know the alleged information"); *Zucco Partners v. Digimarc*, 552 F.3d 981, 997 (9th Cir. 2009) (CW allegations "based on at least one level of hearsay" and that "include[d] no details" were unreliable). That the AC pleads FE1's job title ("flight test engineer"), employment dates, and "Department Manager" (Opp. 8-9, ¶¶37-38) does not magically render him reliable. In *Zucco*, the Ninth Circuit deemed several CWs described "with ample detail" to be unreliable because they were "not positioned to know the information alleged," reported "unreliable hearsay," or provided "conclusory" allegations. 552 F.3d at 995-99 (disregarding CW allegations based on

---

[5] Relying on *In re McKesson HBOC Securities Litigation*, 126 F.Supp.2d 1248, 1272 (N.D. Cal. 2000), Plaintiff claims it is irrelevant that FE1's allegations are based on hearsay because Plaintiff need not plead "admissible evidence." (Opp. 9 n.6.) But *McKesson* predates *Zucco*, in which the Ninth Circuit laid out the framework for assessing the reliability of CWs, which FE1 fails to satisfy. *See* 552 F.3d at 995-99.

"hearsay [] from anonymous finance personnel" that "fail[ed] to provide specifics").

FE2 fares no better. He says he is unaware of EHang and UT traveling to meet in 2022 or 2023. (Opp. 11; ¶¶57-60.) So what? Plaintiff provides no basis to conclude that this "assembly test engineer" would have known if such in-person visits had occurred. FE2 was not in sales, had no role in UT's preorder, and was not responsible for tracking company travel. That "alone defeats the utility of his allegations." *In re Wet Seal Sec. Litig.*, 518 F.Supp.2d 1148, 1173 (C.D. Cal. 2007).[6]

Even setting aside their lack of firsthand knowledge, the FEs do not corroborate the Report; they contradict it. FE1 asserts that Prestige **did** place a preorder, which undercuts Hindenburg's speculation there was no Prestige preorder. (Ex. 27 at 16-20; ¶40.) And FE2 offers nothing to support Hindenburg's claim that UT terminated its preorder—FE2 merely states he was unaware of in-person meetings in 2022 or 2023. (¶¶57-62.) This renders Plaintiff's authorities inapposite. *See In re Zillow Grp. Sec. Litig.*, 2019 WL 1755293, at *5 (W.D. Wash. Apr. 19, 2019) (crediting CW testimony that was "consistent and interlocking"); Opp. 11.

### B.      Plaintiff Concedes Many Challenged Statements Are Inactionable

Plaintiff does not dispute that many challenged statements are inactionable as a matter of law. (Mot. 15-16.) Plaintiff thus concedes the statements are not actionable.[7] *See In re Bare Escentuals Sec. Litig.*, 745 F.Supp.2d 1052, 1076 (N.D. Cal. 2010) (plaintiffs "conceded" arguments they "fail[ed] . . . to rebut").

### C.      Plaintiff Did Not Plead the Prestige Preorder Was Exaggerated

Even if the Court considers FE1's allegations, they are not "specific facts" as required by the PSLRA. *In re Cloudera*, 121 F.4th 1180, 1187 (9th Cir. 2024). FE1's

---

[6] *In re Quality Systems Securities Litigation* is inapposite. (Opp. 9.) There, the CWs were reliable because they reported specific instances of direct contact with individual defendants and demonstrated precisely how their job duties gave them the **personal** knowledge required under the PSLRA. *Quality Sys.*, 865 F.3d 1130, 1145 (9th Cir. 2017). Here, in contrast, Plaintiff relies on two FEs who are not alleged to have ever had any contact with or knowledge of any Individual Defendant.

[7] For the same reason, Plaintiff concedes the sufficiency of **all** EHang's risk warnings and cautionary language. (*See* App. B.)

claim that EHang's sales team told him Prestige preordered 12 AAVs is a "conclusory assertion" because he "has not provided any context surrounding when, why, or how these individuals provided [him] with information." *Costabile v. Natus Med.*, 293 F.Supp.3d 994, 1010 (N.D. Cal. 2018) (CW allegation based on "hearsay statements" without any "supporting context" was "conclusory").

Stripped of FE1's unreliable and unparticularized testimony, all that remains of Plaintiff's Prestige allegations is that the circumstances of its founding bolster the inference that Prestige preordered 12 AAVs rather than 100. (Opp. 9-10.) But Plaintiff merely repeats the AC's insufficient allegations. EHang's Motion explained that Prestige's registered capital says nothing about Prestige's ***current*** capitalization (or that of its parent company Prestige Corp.), nor does the AC allege facts to show Prestige could not raise more funding if and when the conditions for its preorder are satisfied. (Mot. 13, 19-20.) Nor does Plaintiff explain why Mr. Salim's social media activities are relevant, or why being a new company in the industry means the preorder was illusory.[8] (*Id*. at 19-20.) This Court has rejected similar allegations. *See In re PharmaCielo Sec. Litig.*, 2021 WL 4459756, at*6 (C.D. Cal. Apr. 16, 2021) (plaintiff failed to plead company was a sham by alleging that it was "nearly insolvent [and] run by a CEO with a history of running companies into the ground").

### D.   Plaintiff Did Not Plead the UT Preorder Was Canceled

Plaintiff argues that various "indicia" show that UT terminated its preorder at some unspecified time in 2022, (Opp. 10-11), but none of them, standing alone or taken together, show that any statement about the UT preorder was false when made.

***First***, that FE2, an engineer, is unaware of visits between UT and EHang in 2022 or 2023 does not indicate fraud.[9] (*Id*.) And, even if there were no visits, the AC

---

[8] UAM is a nascent industry and there is not a single company in the world approved to conduct air taxi flights. ***Everyone in this industry is new***.
[9] The Opposition misleadingly cites *Starr v. Baca* to argue that when "there are two alternative explanations, . . . both of which are plausible," a complaint will survive dismissal. 652 F.3d 1202, 1216 (9th Cir. 2011); Opp. 10-11. However, *Starr* evaluated whether a complaint in a totally different context satisfied the lenient

fails to allege that visits were a necessary condition of the preorder, especially given the preorder is a ***15-year*** agreement in which no sales are guaranteed. (Mot. 18.) The connection Plaintiff draws between the alleged lack of visits and UT's preorder is "too attenuated." *In re BP plc Sec. Litig.*, 843 F.Supp.2d 712, 767 (S.D. Tex. 2012) (rejecting plaintiffs' interpretation of facts when there was "an equally plausible explanation" not indicating falsity); *Hamano v. Activision Blizzard*, 2019 WL 7882076, at *1 (C.D. Cal. Oct. 17, 2019) (same).

*Second*, UT's partnerships with other companies do not suggest that UT canceled its preorder.[10] UT never stated that it "had moved on" to pursuing a partnership with Robinson ***to the exclusion of EHang***, nor that it believes a hydrogen-powered aircraft is "the more realistic option." (Opp. 11; *see* Ex. 30.) Plaintiff made these allegations up.[11] Indeed, UT made clear it was "working with a variety of external suppliers" and was "not married to any specific player" as its plans were "still in the R&D phase." (Ex. 32 at 5.)[12] UT's multiple partnerships are consistent with its publicly stated "shots on goal" (¶63) strategy to find an option that ***might*** meet its needs ***in the future***.[13]

*Third*, the purported words of Hindenburg's source regarding UT's preorder were: "It's dead—it's a dead end." (Ex. 27 at 16.) But that is too vague under the

pleading requirements of Rule 8. 652 F.3d at 1216. In this securities fraud action, the ***heightened*** pleading standards of Rule 9(b) and the PSLRA apply.

[10] Plaintiff argues it is irrelevant that Unither's website lists EHang's logo as a partner because it is not updated regularly. (Opp. 12.) Plaintiff assumes the website has not been updated because it supposedly does not "list Robinson Helicopter or show its logo" despite having an active partnership with Robinson. (*Id.*) Plaintiff is wrong—the website ***does*** discuss Robinson's R44 helicopter as one of the options in development. (Ex. 9 at 7-8.)

[11] Plaintiff makes no attempt to defend the AC's claim that UT's preorder was conditioned on EHang being the first to develop a satisfactory aircraft. (Mot. 17-18.) Plaintiff also ignores that UT's collaboration with Robinson plainly pertains to a hydrogen-powered helicopter (the R44), not an AAV. (Mot. 19 n.12.)

[12] UT's partnership with Robinson was not new. Robinson's R44 light helicopter had been one of the options UT was exploring for ***years***. (¶¶63-64.)

[13] EHang's AAV range likewise does not indicate preorder cancellation. (Opp. 11.) Robinson's R44 in development for UT ***also*** falls well short of UT's 290-mile range requirement, even with the addition of hydrogen fuel cells. (Ex. 32 at 4; ¶66.) Thus, it must be the case that UT's 290-mile range requirement is aspirational.

PSLRA. Did the source mean UT had terminated the preorder? Or was he merely theorizing it would someday be terminated? Or was he saying that the EHang-UT relationship would not ultimately be successful? Neither Plaintiff nor his counsel ever spoke to Hindenburg's source, so the AC can shed no light on the source's words, much less their intended meaning.

### III.    THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

The PSLRA's "strong inference" standard for pleading scienter "***has teeth***"—it is an "***exacting*** pleading obligation" that "presents ***no small hurdle***" for Plaintiff. *Nguyen v. Endologix*, 962 F.3d 405, 414 (9th Cir. 2020). Plaintiff must plead "***specific contemporaneous*** statements or conditions that demonstrate the ***intentional or the deliberately reckless*** false or misleading nature of the statements when made." *Metzler Inv. GMBH v. Corinthian Colls.*, 540 F.3d 1049, 1066 (9th Cir. 2008). The AC alleges no particularized facts at all to show that any Defendant intended to defraud investors. (Mot. 21-23.) This is fatal.

As an initial matter, Plaintiff admits the AC does not plead a motive to defraud. (Opp. 17-18.) While he argues that it is not dispositive, it "makes it ***much less*** likely" he can plead scienter, and he can only overcome the lack of motive with "***compelling*** and ***particularized*** facts" showing scienter. *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021). Plaintiff pleads nothing of the sort here.

***First***, Plaintiff downplays the lack of contact between the FEs and Defendants. (Opp. 18.) But not only is it a problem, it is also a symptom of the greater issue: the AC fails to make ***any*** specific allegation regarding any Defendant's state of mind. (Mot. 21-22.) Nor does it link any Defendant's knowledge to a specific challenged statement. For these reasons, the AC ***must*** fail.[14] *Glazer Cap. Mgmt. v. Magistri*, 549 F.3d 736, 745 (9th Cir. 2008) ("the PSLRA requires [plaintiffs] to plead scienter with respect to those individuals who actually made the false statements"); *Farhar*, 714

---

[14] This District has rejected "group pleading" language ***identical*** to that in ¶142. *Garcia v. J2 Glob.*, 2021 WL 1558331, at *18 (C.D. Cal. Mar. 5, 2021).

F.Supp.3d at 1212 (no scienter where "no attempt [was made] to connect a speaker's knowledge of falsity to any individual statement alleged"); *Mendoza v. HF Foods Grp.*, 2021 WL 3772850, at *8 (C.D. Cal. Aug. 25, 2021) (scienter allegations "with no particularized facts alleged as to *each defendant*, are insufficient").

***Second***, Plaintiff cannot plead scienter by claiming the UT and Prestige preorders were important. (Opp. 15.) To start, Plaintiff did not adequately allege that UT canceled its preorder or that the Prestige preorder was exaggerated. (*Supra* at II.C., II.D.) Plaintiff's failure sets this case apart from *Berson v. Applied Signal Technology*. (Opp. 14-15.) There, the plaintiffs adequately alleged the existence of "stop-work orders" by alleging they disrupted the company's work, tanked its revenues during the class period, caused employee layoffs, four reliable CWs corroborated their existence, and the defendants admitted to a stop-work order. 527 F.3d 982, 984-88 (9th Cir. 2008) ("high-level managers must have known about the [stop-work] orders because of their devastating effect on the corporation's revenue"). ***The AC pleads no such corroborative facts***—no drop in revenue, no layoffs, no interruption in the production of AAVs. Moreover, the relevant preorders would never have had an effect on EHang's revenues during the Class Period because EHang's preorders are conditional, (App. B at 8-16), and revenue is not recognized until delivery of the AAVs. *See, e.g.*, Ex. 5 at 16. And, EHang repeatedly warned investors that preorders were conditional and did not guarantee sales. (*See* App. B.) Thus, Plaintiff has not adequately alleged that this is one of the "exceedingly rare" cases where the core operations doctrine by itself is enough to allege scienter. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008); *see* Mot. 22 n.15.

Plaintiff also contends Defendants must have known their statements about Prestige and UT were false because they were officers of EHang. But that is just another form of the core operations doctrine, which "cannot support a strong inference of scienter because Plaintiff[] ha[s] not provided detailed and specific allegations about management's exposure to factual information within the

company." *Nozak v. N. Dynasty Mins.*, 804 F.App'x 732, 734 (9th Cir. 2020); *see also Petrie v. Elec. Game Card*, 2011 WL 13131246, at *4 (C.D. Cal. May 26, 2011) (plaintiff "must do more" than rely on defendants' positions because any "officer[] could be said to possess the requisite knowledge by virtue of his . . . position").

**Third**, Plaintiff's assertion that Defendants knew their statements were false because they discussed the preorders lacks support. Plaintiff's cases are inapposite. (Opp. 15-16.) They all involved defendants boasting of specialized knowledge, directly referencing datasets or documents that contradicted their public statements, or otherwise demonstrating they had access to contradictory information, which "bridg[ed] the scienter gap." *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014). But none of the challenged statements here suggest Defendants had access to specific documents or datasets that would have informed them their statements were false. Plaintiff's assertion is just a request that the Court "infer scienter based on an inference that [Defendants'] statements were false," which fails under the PSLRA. *In re SentinelOne Sec. Litig.*, 2024 WL 3297150, at *7 (N.D. Cal. July 2, 2024).

**Fourth**, Plaintiff's continued fixation on EHang's removal of United's logo from its investor presentation makes no sense.[15] If, as Plaintiff claims, EHang was trying to distance itself from its prior statements about UT, (Opp. 16-17), it defies logic that EHang would remove UT's logo from one presentation while continuing to reference UT's preorder in its SEC filings **to this day**. (Mot. 22.) But even if the Court credits Plaintiff's speculation, the AC does not allege a single fact connecting the change in the presentation to any Defendant. (*Id*. at 21.) In any event, Plaintiff does not allege facts showing that EHang changed the presentation **before** any challenged statement was made, so it cannot demonstrate Defendants' scienter. *See*

---

[15] EHang did not argue that UT's logo was not in EHang's October 2023 investor presentation. (Opp. 16 n.11.) EHang pointed out that the removal of UT's logo from EHang's October 2023 investor presentation (so that it was not in the November 2023 investor presentation) had to have occurred at some point **after** October 13, 3023 because that is when the October 2023 investor presentation was published. (Mot. 22; ¶¶95-96.) Thus, the removal of UT's logo cannot support scienter because it happened sometime **after** the last challenged statement was made. (*Id*.)

*Metzler*, 540 F.3d at 1065-66; Mot. 22-23.

***Fifth***, Plaintiff cannot rely on EHang's alleged "pattern" of portraying "terminated agreements as live deals." (Opp. 17; Mot. 23.) This is a transparent attempt to evade the PSLRA's pleading requirements by relying on Hindenburg's theories that Plaintiff admittedly could not corroborate. (Opp. 12.) The AC does not challenge as false any statements about EHang's other partnerships (¶¶68-98), even though statements about partnerships with other companies were made during the Class Period. (¶116.) The Court can neither accept as fact speculation that EHang lied about other partners when no well-pled facts support that, nor infer scienter regarding Defendants' ***unrelated*** statements about UT and Prestige.[16] *See In re Overstock Sec. Litig.*, 2021 WL 4267920, at *8 (D. Utah Sept. 20, 2021) (statement unrelated to company's guidance and "not alleged to be false or misleading" is "irrelevant to whether any Defendant knew the guidance" was misleading).

A holistic review of Plaintiff's purported "evidence" (Opp. 18) confirms what we already know—EHang operates in a growing but risky industry and frankly disclosed those risks to investors. It repeatedly warned that "[p]re-orders do not obligate the customers to purchase [] AAVs" and "[f]ulfilment is expected to take several years and is conditional upon . . . achievement of performance milestones and receipt of regulatory approvals." (*E.g.*, Ex. 33 at 11 n.5.) Plaintiff does not deny the adequacy or accuracy of EHang's risk warnings. Instead, he asks the Court to make a series of unsupported inferences, each one dependent on the previous one, to ultimately arrive at scienter. But "stacking inference upon inference in this manner violates the [PSLRA's] mandate that the strong inference of scienter be supported by facts, not other inferences." *SentinelOne*, 2024 WL 3297150, at *7.

---

[16] This argument is also illogical. The AC never alleges that the EHang and Heli-Eastern partnership involved preorders of AAVs. (¶123; Ex. 15.) So, Heli-Eastern's alleged purchase of AAVs from other companies cannot mean it canceled its partnership with EHang, much less that EHang had misrepresented the partnership. (Opp. 17.)

## IV.    THE AC FAILS TO PLEAD LOS CAUSATION

The Motion explained that, under controlling Ninth Circuit law, the Hindenburg Report was not a corrective disclosure that caused the alleged loss. (Mot. 24-25.) Plaintiff's arguments otherwise (Opp. 18-22) fail for two reasons.

***First,*** the Hindenburg Report was written by a short-seller motivated to lie, and it is an uncorroborated report that disclaims its own accuracy. It consisted of simplistic analysis of publicly available, easily accessible, and easily digestible information. As such, the Hindenburg Report is like the Hindenburg report in *Espy v. J2 Global* that, just last year, the Ninth Circuit held was not a corrective disclosure. 99 F.4th 527, 542 (9th Cir. 2024). Plaintiff argues the Report is different because it quoted one anonymous source and Hindenburg is "well-known."[17] (Opp. 19-21.) But neither fact changes the analysis or conclusion. The *Espy* court held that whether a short-seller report constitutes a corrective disclosure depends on "whether the underlying data was publicly available, the complexity of the data and its relationship to the alleged misstatements, and [whether] great effort [was] needed to locate and analyze that information." *Espy*, 99 F.4th at 541 (Hindenburg report not a corrective disclosure because plaintiff "alleges no facts plausibly explaining why this information[,] . . . requiring no expertise or specialized skills beyond what a typical market participant would possess to uncover and disseminate—was not yet reflected in J2's stock price").[18] In other words, the short-seller report must be examined as a whole. And here, Plaintiff does not and cannot claim that it took great effort for Hindenburg to obtain information from easy to find English language documents and

---

[17] The inclusion of alleged non-public information in the Report is certainly no guarantee of loss causation. *See, e.g.*, *In re EHang Holdings*, 646 F.Supp.3d 433, 465-66 (no loss causation despite private investigator reports with photographs).

[18] *Borteanu v. Nikola* and *In re Genius Brands International Securities Litigation* are inapposite. (Opp. 21 n.14). In *Borteanu*, the Hindenburg report was a corrective disclosure because the report included "newly revealed photographs" that "directly countered" the challenged statements. 2023 WL 11017679, at *20 (D. Ariz. Dec. 8, 2023). In *Genius*, plaintiffs attached documents to their complaint demonstrating information in the Hindenburg report had not been "readily digestible" until "Hindenburg [] synthesized it." 97 F.4th 1171, 1187 (9th Cir. 2024). There is nothing like that in the Hindenburg Report or the AC.

a single alleged former employee or that Hindenburg performed complex analysis. And Hindenburg's anonymous source himself made only sweeping, vague generalizations that "in China," companies don't admit to dead deals. (Ex. 27 at 16.) When examined as a whole, it is obvious the Hindenburg Report fails the *Espy* test.[19]

***Second***, notwithstanding Plaintiff's quibbles (Opp. 21-22), EHang's stock price recovered entirely within seven trading days of the Hindenburg Report's publication and ultimately closed the year 12% above its price just before the Report's release. (Mot. 25.) It is thus reasonable to infer that the Report did not cause the stock price decline. *See Wochos v. Tesla*, 985 F.3d 1180, 1198 (9th Cir. 2021) ("quick and sustained price recovery" refuted inference that report caused stock price decline); *Bajjuri v. Raytheon Techs.*, 2023 U.S. Dist. LEXIS 92114, at *58 (D. Ariz. May 25, 2023) (no loss causation where stock price recovered in four trading days).

Plaintiff ignores that he must do more than plead that a stock price drop followed the Report's release. He must plead facts that "make it plausible that the market treated [the Report's] allegations as sufficiently credible to be acted upon as truth." *Leacock v. IonQ*, 2023 WL 6308045, at *22 (D. Md. Sept. 28,2023) (facts rendering loss causation theory plausible might include an "influential investment analyst publicly downgrad[ing] the stock," or demonstration that short-seller "had an unbroken track record of accuracy"). The AC pleads zero such additional facts.

## V.     CONCLUSION

For the reasons stated above, the Court should dismiss the AC with prejudice.[20]

---

[19] Plaintiff's cases are inapposite. (Opp. 21 n.14). Many of the cases are out-of-circuit, and the Second and Sixth Circuit apply Rule 8 to loss causation, whereas the Ninth Circuit applies Rule 9. *Wilamowsky v. Take-Two Interactive Software*, 818 F.Supp.2d 744, 753 n.7 (S.D.N.Y. 2011); *Or. Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 605 (9th Cir. 2014). Additionally, the short-seller reports in *In re Mullen Automotive Securities Litigation* and *Lea v. TAL Education Group* included allegations from multiple CWs that corroborated each other. 2023 WL 8125447, at *11 (C.D. Cal. Sept. 28, 2023); 837 F.App'x 20, 28 (2d Cir. 2020).

[20] Plaintiff claims that "counsel for EHang has not agreed to accept service" for the Individual Defendants, (Opp. 15 fn. 9)—but Plaintiff never even bothered to ask. In any event, Plaintiff does not dispute that the ample grounds that EHang has presented for dismissal to apply to all defendants.

Dated:          March 14, 2025              COOLEY LLP


                                            By: */s/ Linh K. Nguyen*
                                                 Linh K. Nguyen

                                            Attorneys for Defendant
                                            EHang Holdings Limited

13

**REPLY ISO MOTION TO DISMISS**
2:23-CV-10165-MWC (DFMX)