Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Yu Shi (*pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: yshi@rosenlegal.com

*Counsel for Plaintiff and the Settlement Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZHAN KUI ZHANG, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and XIN FANG,<br><br>Defendants. | Case No: 2:23-cv-10165-MWC (DFMx)<br><br>CLASS ACTION<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES AND AWARD TO PLAINTIFF**<br><br>Hon. Michelle Williams Court<br><br>Hearing Date: January 9, 2026<br>Hearing Time: 1:30 PM<br>Courtroom: 6A |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.   CASE BACKGROUND ..................................................................... 2

III.  THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND ...................................................................... 2

      A.    Lead Counsel is Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class ............................................ 2

      B.    The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund ................................................................... 3

      C.    The Requested Attorneys' Fees are Reasonable and Merited ................ 4

            1.    Lead Counsel Secured a Substantial Recovery for the Settlement Class ................................................................... 4

            2.    The Risks and Complexity of the Litigation Support the Requested Fee Amount ................................................... 6

            3.    Lead Counsel Skillfully Managed This Case Against Formidable Adversaries ................................................... 7

            4.    Lead Counsel Undertook a Significant Financial Risk ................. 9

            5.    Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund .................................. 10

            6.    The Settlement Class's Reaction Supports the Requested Fee........ ................................................................................. 12

IV.   LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ................................... 15

V.    THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFF ............ 16

VI.   CONCLUSION .................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
  572 F.3d 221 (5th Cir. 2009) .................................................................................. 7

*Arp v. Hohla & Wyss Enterprises, LLC*,
  2020 WL 6498956 (S.D. Ohio Nov. 5, 2020) ...................................................... 14

*Baker v. SeaWorld Ent., Inc.*,
  2020 WL 4260712 (S.D. Cal. July 24, 2020) ...................................................... 13

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) .................... 11

*Blum v. Stenson*,
  465 U.S. 886 (1984) ...................................................................................... 3, 12

*Boyd v. Bank of Am. Corp.*,
  2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .................................................... 11

*Brown v. China Integrated Energy Inc.*,
  2016 WL 11757878 (C.D. Cal. July 22, 2016) .................................................... 17

*Christine Asia Co. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................................................ 8

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................ 13

*City of Providence v. Aeropostale, Inc.*,
  2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................ 10

*Craft v. Cnty. of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ......................................................... 13, 14

*Dyer v. Wells Fargo Bank, N.A.*,
  303 F.R.D. 326 (N.D. Cal. 2014) ........................................................................ 17

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .............................................................................. 1

ii

*Feller v. Transamerica Life Ins. Co.*,
2019 WL 6605886 (C.D. Cal. Feb. 6, 2019).............................................................14

*Gustafson v. Valley Ins. Co.*,
2004 WL 2260605 (D. Or. Oct. 6, 2004)................................................................11

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994).....................................................................................16

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) .........................................................14

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................ 4

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989)........................................................................ 4

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ...............................................4, 8, 10

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......................................................13

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 n2 (D. Ariz. Apr. 20, 2012).......................................................14

*In re Audioeye, Inc., Sec. Litig.*,
2017 WL 5514690 (D. Ariz. May 8, 2017) .............................................................11

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) ..................................................................... 7

*In re Brooktree Sec. Litig.*,
915 F. Supp. 193 (S.D. Cal. 1996) .......................................................................... 3

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)...........................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)........................................................6, 10

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) .......................................................6, 9

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ....................................................5, 9, 12

*In re HP Inkjet Printer Litig.*,
716 F.3d 1173 (9th Cir. 2013)................................................................................. 5

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007)..............................................................13, 16

*In re IsoRay, Inc. Sec. Litig.*,
2017 WL 11461073 (E.D. Wash. Mar. 7, 2017)...................................................11

*In re LJ Int'l, Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)..................................................5, 15

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)...............................................................................10

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011)........................................................11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)..........................................................passim

*In re Pac. Enterprises Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995)...............................................................................6, 10

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ....................................................... 5

*In re Snap Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb. 18, 2021)........................................................ 5

*In re Stable Rd. Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ................................................3, 4, 14

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999)........................................................................13

iv

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) .................................................................14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..............................................................2, 3, 9, 12

*Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*,
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ........................................................ 5

*Jenson v. First Tr. Corp.*,
    2008 WL 11338161 (C.D. Cal. June 9, 2008) ...............................................16, 17

*Jiangchen v. Rentech, Inc.*,
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..................................................... 8

*Johnson v. US Auto Parts Network, Inc.*,
    2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ..................................................... 6

*Katz v. China Century Dragon Media, Inc.*,
    2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ...............................................12, 15

*Kendall v. Odonate Therapeutics, Inc.*,
    2022 WL 1997530 (S.D. Cal. June 6, 2022)........................................................ 5

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................. 8

*Lopez v. First Student, Inc.*,
    2022 WL 618973 (C.D. Cal. Feb. 8, 2022)........................................................13

*Lopez v. Youngblood*,
    2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................................................... 4

*Luna v. Marvell Tech. Grp.*,
    2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ....................................................15

*Mauss v. NuVasive, Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)........................................................11

*McPhail v. First Command Fin. Plan., Inc.*,
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................................................... 6

v

*Millan v. Cascade Water Servs., Inc.*,
   2016 WL 3077710 (E.D. Cal. May 31, 2016)......................................................11

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) .........................................................................11

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014)........................................................................15

*Pace v. Quintanilla*,
   2014 WL 4180766 (C.D. Cal. Aug. 19, 2014)...................................................... 8

*Patel v. Axesstel, Inc.*,
   2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ......................................................11

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ............................................................................... 3

*Rausch v. Hartford Fin. Servs. Grp.*,
   2007 WL 671334 (D. Or. Feb. 26, 2007) ............................................................11

*Razilov v. Nationwide Mut. Ins. Co.*,
   2006 WL 3312024 (D. Or. Nov. 13, 2006).....................................................11, 17

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12303367 (C.D. Cal. July 9, 2013) ....................................................... 6

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997).......................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)..............................................................................16

*Sawant v. Ramsey*,
   2012 WL 3265020 (D. Conn. Aug. 9, 2012) ....................................................... 9

*Schneider v. Champignon Brands Inc.*,
   2023 WL 11944374 (C.D. Cal. Feb. 28, 2023).....................................................10

*Singer v. Becton Dickinson & Co.*,
   2010 WL 2196104 (S.D. Cal. June 1, 2010)........................................................11

*Steiner v. Am. Broad. Co.*,
    248 F. App'x 780 (9th Cir. 2007) ...................................................................14

*Szymborski v. Ormat Techs., Inc.*,
    2012 WL 4960098 (D. Nev. Oct. 16, 2012) .................................................11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ......................................................................................... 3

*Todd v. STAAR Surgical Co.*,
    2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ...............................................17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ........................................................................... 4

*Vandervort v. Balboa Cap. Corp.*,
    8 F. Supp. 3d 1200 (C.D. Cal. 2014) ............................................................11

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ........................................................................... 2

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................... 8

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ................................................................3, 4, 6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) .............................................................................. 4

*Yedlowski v. Roka Bioscience, Inc.*,
    2016 WL 6661336 (D.N.J. Nov. 10, 2016) ..................................................... 7

**Statutes**

15 U.S.C. § 78u-4(a)(4) ........................................................................................16

15 U.S.C. § 78u-4(a)(6) .......................................................................................... 4

**Other Authorities**

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ...............................16

Lead Plaintiff Zhan Kui Zhang ("Plaintiff") respectfully submits this memorandum in support of his Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiff.[1]

## I.    INTRODUCTION

Lead Counsel has secured a Settlement of $1,985,000 for the benefit of the Settlement Class—a highly favorable result in a complex and risky case against China-based Defendants.

Having achieved this significant recovery, Lead Counsel respectfully requests:

- Attorneys' fees equal to 25% of the Settlement Amount ($496,250);
- Reimbursement of litigation expenses in the amount of $57,048.70; and
- A service award of $2,500 to Plaintiff, all to be paid from the Settlement Fund.

Under well-established precedent, litigants who create a common fund for the benefit of a class are entitled to attorneys' fees and expense reimbursement from that fund. In the Ninth Circuit, courts typically award fees as a percentage of the common fund, considering factors such as quality of the result achieved, risk undertaken by counsel, and reaction of the Settlement Class. Here, each factor strongly supports awarding Lead Counsel 25% of the Settlement Amount.

Lead Counsel assumed substantial risk in prosecuting this action. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes stringent pleading standards that are "not easy to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement ("Stipulation") (ECF No. 79). Citations to "Shi Decl." or "¶__" are to the Declaration of Yu Shi. Citations to "Ex. ___" are to exhibits to the Shi Decl. Citations to "Bravata Decl." are to the Declaration of Josephine Bravata (Ex. 1). Citations to "Final Approval Brief" are to the Memorandum of Law in support of Plaintiff's Final Approval of Settlement, Plan of Allocation, and Final Certification of Settlement Class, filed herewith.

1

F.3d 1048, 1052 (9th Cir. 2003). Despite these challenges, Lead Counsel obtained an excellent recovery for the Settlement Class at an early stage.

The Settlement Class's reaction further supports the request. Although the objection deadline is December 19, 2025, to date no Settlement Class Member has objected to the Settlement or the requested fees and expenses, which were disclosed in the Notice. Bravata Decl., ¶¶14–15. Likewise, there have been no requests for exclusion.

The requested $57,048.70 in expenses reimbursement—primarily for experts, investigators, JAMS mediation, and notices to the class—were reasonable and necessary to achieve this result.

Finally, Plaintiff seeks a $2,500 service award for time and effort devoted to representing the Settlement Class. This amount is reasonable and consistent with awards in similar cases.

## II. CASE BACKGROUND

A summary of Plaintiff's allegations, the procedural history of this Action, and the events leading to the Settlement are set forth in the Final Approval Brief, Section II.

## III. THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE SETTLEMENT FUND

### A. Lead Counsel is Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class

Under the common fund doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). This doctrine exists to prevent unjust enrichment: "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994)

("WPPSS"). The amount awarded must be "reasonable under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are particularly critical in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); see also *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1–2. Both *Tellabs* and *Halliburton* were securities fraud class actions in which attorneys' fee awards were necessary to incentivize private enforcement. For the same reasons, an award here is necessary and appropriate.

**B.**    **The Court Should Award Lead Counsel a Reasonable Percentage of the Common Fund**

Under the common fund doctrine, a reasonable fee is typically calculated as "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). In the Ninth Circuit, courts have discretion to award fees using either the percentage-of-the-fund method or the lodestar/multiplier method. *In re Washington Pub. Power Supply Sys. Sec. Litig.* ("WPPSS"), 19 F.3d 1291, 1295–96 (9th Cir. 1994). However, "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); see also *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *11 (C.D. Cal. Apr. 23, 2024) (percentage approach is the "prevailing method").

The percentage method offers significant advantages. It "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); see also *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (affirming 28% fee and noting lodestar can incentivize unnecessary hours and

discourage early settlement). The percentage approach also "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). Further, it conserves judicial resources by avoiding the burdensome lodestar analysis and spares the Settlement Class from delays associated with such review. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989); *Lopez v. Youngblood*, 2011 WL 10483569, at *4 (E.D. Cal. Sept. 2, 2011).

Finally, the PSLRA expressly supports the percentage-of-the-fund approach, providing that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). Courts have recognized that "part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014). Accordingly, the Court should award attorneys' fees based on the percentage-of-recovery method.

### C.   The Requested Attorneys' Fees are Reasonable and Merited

Factors that courts use to determine whether the requested percentage is fair and reasonable include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases." *Stable Rd.,* 2024 WL 3643393, at *12 (citing *Vizcaino*, 290 F.3d at 1048-51. Here, each of these factors supports awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

#### 1.   Lead Counsel Secured a Substantial Recovery for the Settlement Class

Courts consistently recognize that the ultimate result achieved is a major factor to be considered in making a fee award. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424,

4

436 (1983) (finding the "most critical factor is the degree of success obtained"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery").

Here, Lead Counsel secured a $1,985,000 Settlement in a case against China-based Defendants who are effectively judgment-proof. As explained in the Final Approval Brief, Plaintiff's damages expert estimates that maximum class-wide damages could reach $23 million, but that figure assumes the entire decline in EHang's ADS price following publication of the Hindenburg Report was caused by the single remaining claim—the alleged Prestige pre-order fraud. ¶25. Given the number and nature of other alleged frauds identified in the Hindenburg Report, however, it is highly unlikely that a jury would attribute the entire stock drop to the Prestige allegation. More realistically, a jury would assign only a fraction of the total damages to that claim, with the precise amount determined through a "battle of experts" between Plaintiff's and Defendants' damages experts.

Even assuming class-wide damages were $23 million, the Settlement represents a recovery of approximately 8.6%, which is well within the range of percentages typically achieved in securities class action settlements. *E.g., In re Snap Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (settlement represented "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *Omnivision*, 559 F. Supp. 2d at 1042 (approving 6% recovery of maximum damages) (citing *In re Heritage Bond Litig.*, 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3%)); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *3 (C.D. Cal. Oct. 19, 2009) (4.5%); *Kendall v. Odonate Therapeutics, Inc.,* 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (3.49%); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (1.99%); *Int'l Bhd. of Elec. Workers Loc. 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering

about 3.5% of maximum damages and noting that the amount is within the median recovery in securities class actions settled in the prior few years); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at \*5 (S.D. Cal. Mar. 30, 2009) (approving settlement recovering 7% of estimated damages).

Additionally, NERA Economic Consulting found that between January 2015 and December 2024, for cases with damages between $20,000,000 and $49,000,000, the median settlement value as a percentage of losses was 5.2%. (Ex. 4, Fig. 23). In 2024, the median recovery in securities class actions was approximately 1.2%. *Id.*, Fig. 24. Thus, the recovery here compares favorably to recoveries in similar securities class action settlements despite above-average litigation and collection risk, supporting the requested fee.

### 2. The Risks and Complexity of the Litigation Support the Requested Fee Amount

The risks and complexity of the litigation are important factors in determining a fee award. *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (fees justified "because of the complexity of the issues and the risks."); *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance"). Securities class actions are complex, difficult to prove, and risky. *In re Heritage Bond Litig.*, 2005 WL 1594389, at \*6 (C.D. Cal. June 10, 2005); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at \*6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear.'") (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at \*17 (S.D.N.Y. Nov. 8, 2010)); *Johnson v. US Auto Parts Network, Inc.*, 2008 WL 11343481, at \*3 (C.D. Cal. Oct. 9, 2008) ("a number of courts have commented on the difficulty and uncertainty of maintaining a securities class action."). "[T]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional

action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).

This case is no exception. To meet the PSLRA's demanding pleading requirements, Plaintiff undertook an extensive, cross-border investigation to prepare a complaint with the requisite specificity. The challenge of overcoming a motion to dismiss cannot be overstated. As one court noted when dismissing securities claims against BP following the Deepwater Horizon disaster, "federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading." *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012). Courts have recognized that "legal precedents are continually making it more difficult to plead securities class actions," and have accordingly awarded higher fees in such cases. *Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016).

This case also involves complexities that go well beyond those typically encountered in securities class actions. The Defendants—and consequently most of the evidence—are located in China. Discovery would have required Plaintiff to navigate the significant hurdles posed by Chinese data export laws. Much of the documentary evidence is likely in Chinese, necessitating translations and review by bilingual attorneys. Depositions of Defendants and fact witnesses would likely require interpreters and take place in Asia. Additionally, China does not recognize U.S. judgments, putting into question the ability of a plaintiff to collect even if a judgment is obtained. ¶¶29-30. The "undesirability" of these challenges is underscored by the fact that only two firms sought appointment as lead counsel in this action. *See* ECF No. 33.

### 3. Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The skill required to litigate the case and the quality of work performed support the requested fee award. "The prosecution and management of a complex national class

action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019); *Am. Apparel,* 2014 WL 10212865, at *22 (similar).

Lead Counsel has amassed the skills and experience needed to prosecute this case through their considerable experience litigating and settling similar actions. Ex. 3 (firm resume). They have shown they are ready, willing, and able to litigate. *See, e.g., Pace v. Quintanilla*, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is "highly qualified [and] experienced" in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement). Moreover, Rosen has considerable experience litigating, and recovering for investors, against Chinese issuers. *See e.g., Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (achieving $250 million settlement against Alibaba, with the Court stating that "[t]he quality of representation by [Rosen] and Defendants' counsel was high in this case . . ."); *De Schutter v. Tarena International, Inc., et al*., Case No. 1:21-cv-03502 (E.D.N.Y.); *Beltran v. SOS Limited, et al.,* Case No. 1:21-cv-07454 (D.N.J.); *Bell v. Kanzhun Limited, et al*., Case No. 2:21-cv-13543 (D.N.J.); *Rupp, et al., v. Momo, Inc., et al.,* Case No. 1:19cv-04433 (S.D.N.Y.).

Lead Counsel brought the same level of skill, experience, and determination to this Action, achieving a favorable resolution for the Settlement Class. Counsel overcame EHang's motion to dismiss and secured an advantageous Settlement— while

avoiding the time-consuming and costly discovery process that would have diminished any eventual recovery.

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at *20. Here, Defendants were represented by Cooley LLP, a prominent international law firm with a well-respected securities litigation practice. Defense Counsel are experienced securities practitioners who advocated forcefully for their clients. That Lead Counsel achieved a favorable Settlement in the face of formidable opposition weighs in favor of the requested fee.

### 4. Lead Counsel Undertook a Significant Financial Risk

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *Heritage Bond*, 2005 WL 1594389, at *14 ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

The risk inherent in contingency fee litigation is far from theoretical. In many cases, plaintiffs' counsel devote thousands of hours and substantial resources, only to receive no compensation despite their diligence and expertise. Since the enactment of the PSLRA, a significant percentage of securities cases have been dismissed at the pleading stage. And the risks do not end there—success at trial does not guarantee recovery. For example, in *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997), a jury awarded plaintiffs $81 million against an accounting firm, only for the verdict to be reversed on appeal and judgment entered for the defendant. Similarly, in *Sawant v. Ramsey*, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen invested thousands of hours to secure a trial verdict, yet ultimately could not collect on the judgment.

The risks in this case were no different. Lead Counsel's fee was entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time,

effort, and expense had been expended. Lead Counsel risked non-payment of a total of 444.21 hours of professional time worth $481,352.75 as well as incurring expenses of $57,048.70 to bring this case to a successful conclusion. ¶¶37, 41. "This type of 'substantial outlay, when there is a risk that [no money] will be recovered, further supports the award of the requested fees.'" *Am. Apparel*, 2014 WL 10212865, at *22; *see also City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis"); *Flag Telecom*, 2010 WL 4537550, at *27 ("[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Lead Counsel] have not been compensated for any time or expenses since this case began….").

### 5. Fee Awards Granted in Similar Cases Further Support an Award of 25% of the Settlement Fund

The Ninth Circuit has established a benchmark for attorneys' fees in common fund cases of 25%, which the Court may adjust upwards or downwards for special circumstances. *Pac. Enterprises*, 47 F.3d at 379 (affirming fee of one-third of settlement fund). Indeed, courts in the Ninth Circuit have recognized that "in most common fund cases, the award exceeds the benchmark" and that "this is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds [the] benchmark."). Moreover, as this Action reached an early resolution, "[c]ourts in this district typically adhere to this benchmark in cases in which there is little active litigation pre-settlement." *Schneider v. Champignon Brands Inc.*, 2023 WL 11944374, at *9 (C.D. Cal. Feb. 28, 2023). Here, Lead Counsel requests an award of attorneys' fees of 25% of the Settlement Amount.

Courts in the Ninth Circuit frequently award fees at or above the 25% benchmark in connection with securities class action settlements under $10 million, like the Settlement here. *E.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th

Cir. 2000) (affirming fee award of one-third of $1.725 million settlement); *In re IsoRay, Inc. Sec. Litig.*, 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) (awarding attorneys' fees of 30% of $3,537,500 settlement); *Szymborski v. Ormat Techs., Inc.*, 2012 WL 4960098, at *4 (D. Nev. Oct. 16, 2012) (awarding attorneys' fees of 30% of $3,100,000 settlement); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (awarding 30% of $8.9 million); *In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement); *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees of 30% of $7.9 million settlement); *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding attorneys' fees of 30% of $1.25 million settlement).

Courts in the Ninth Circuit also routinely award attorneys' fees at or above the benchmark in non-securities, common fund actions. *See e.g., Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding attorneys' fees of one-third of common fund and collecting cases noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases."); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding one-third fee); *Vandervort v. Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding 33% fee); *Millan v. Cascade Water Servs., Inc.*, 2016 WL 3077710, at *11–12 (E.D. Cal. May 31, 2016) (approving an award of 33% of the common fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (awarding one-third of the settlement fund); *Rausch v. Hartford Fin. Servs. Grp.*, 2007 WL 671334, at *2 (D. Or. Feb. 26, 2007) (awarding 30% of settlement fund); *Gustafson v. Valley Ins. Co.*, 2004 WL 2260605, at *2 (D. Or. Oct. 6, 2004) (same); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) (same).

The requested benchmark of a 25% fee is also lower than contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("[C]ontingency fee arrangements generally range from 30% to 40% of final recovery.").

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Considering the result achieved, the unique and substantial risks avoided in securing a prompt recovery, the contingent nature of the representation, and the fees awarded in comparable securities class actions within this Circuit, an award at the 25% benchmark of the Settlement Amount obtained for the Settlement Class is reasonable. There is no evidence that Lead Counsel's performance was substandard such that a reduction below the Ninth Circuit benchmark is warranted.

### 6.    The Settlement Class's Reaction Supports the Requested Fee

Presently, there are no objections to the requested attorneys' fees or any aspect of the Settlement. ¶18; Bravata Decl., ¶15. "The existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21; *Omnivision*, 559 F. Supp. 2d at 1048. To date, 42,824 Notices have been disseminated to potential Settlement Class Members. Bravata Decl. ¶9. The Summary Notice was also published electronically on *GlobeNewswire. Id.*, ¶11 The Notice informed Settlement Class Members that Lead Counsel would seek attorneys' fees of up to 25% of the Settlement Amount, plus interest, and litigation expenses in an amount not to exceed $67,000, and that they would seek an award to Plaintiff of up to $2,500. Bravata Decl., Exs. A, C, and D. The Long Notice also advised Settlement Class Members of their right to object to these requests for relief or to request exclusion from the Settlement, and explained how to do so. *See id.*

12

The deadline for Settlement Class Members to submit objections or requests for exclusion is December 19, 2025. To date, no Settlement Class Member has objected to the Settlement, the requested attorneys' fees, the reimbursement of expenses, or award to Plaintiff. ¶18; Bravata Decl. ¶15. This absence of objections strongly supports the fee request, as courts have recognized that "the lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007). Likewise, no Settlement Class Member has requested exclusion. ¶18; Bravata Decl. ¶14. The absence of valid opt-outs further demonstrates the overwhelmingly positive reaction of the Settlement Class, which supports approval of the requested fee. See *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement where 16 exclusion requests represented only 4.86% of the class); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (class reaction supported settlement when opt-outs represented less than 1% of the class).

\* \* \*

The Ninth Circuit does not require a lodestar cross-check, and courts have recognized that in many cases it is "not a useful reference point." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008); see also *Lopez v. First Student, Inc.*, 2022 WL 618973, at \*6 (C.D. Cal. Feb. 8, 2022) (finding lodestar cross-check unnecessary after evaluating factors supporting a 30% fee request). While some courts perform a lodestar cross-check to confirm reasonableness, it is not required. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at \*9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check…can demonstrate reasonableness.").

Here, Plaintiff seeks an award at the Ninth Circuit's well-established 25% benchmark. Courts have repeatedly held that when the requested fee falls within this benchmark, a lodestar analysis is unnecessary. *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at \*8 (S.D. Cal. July 24, 2020) ("Courts have found that a lodestar analysis

13

is not necessary when the requested fee is within the accepted benchmark."). *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010) (same). Accordingly, the necessity of conducting a lodestar cross-check here is greatly diminished. [2]

Lead Counsel has already devoted substantial time and resources to prosecuting this Action and will continue to do so through completion of the case. This includes preparing Plaintiff's reply, attending the final approval hearing, overseeing the claims administration process, and filing a motion for distribution of settlement proceeds. Courts recognize that class counsel "frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Arp v. Hohla & Wyss Enterprises, LLC*, 2020 WL 6498956, at *7 (S.D. Ohio Nov. 5, 2020). Importantly, Lead Counsel will not seek additional compensation for this work. ¶51. See *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% fee in part due to counsel's ongoing obligations), aff'd, 674 F. App'x 37 (2d Cir. 2016).

To date, Lead Counsel's lodestar is $481,352.75 for 444.21 hours of professional time, resulting in a multiplier of 1.03. ¶37.[3] A lodestar multiple of approximately 1.0

---

[2] When conducting a lodestar cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *Stable Rd.*, 2024 WL 3643393, at *15 (*citing In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007)). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 n2 (D. Ariz. Apr. 20, 2012).

[3] Lead Counsel's multiplier is considerably lower than those found to be reasonable in the Ninth Circuit. *E.g., Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *Craft*, 624 F. Supp. 2d 1123 (granting 25% of fund that resulted in a 5.2 multiplier); *Feller v. Transamerica Life Ins. Co.*, 2019 WL 6605886, at *13 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit.").

14

means that Lead Counsel here is not receiving any premium to account for the risk, delay in payment, and contingent nature of representation. Should the Court conduct an informal lodestar cross-check, this analysis confirms that Plaintiff's request for 25% of the Settlement Amount is not only reasonable but well within the range approved by courts in similar cases.

## IV.    LEAD COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

"[A]n attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."). The Notice informed potential Settlement Class Members that Lead Counsel would seek expenses in an amount not to exceed $67,000. Bravata Decl., Exs. A, C, and D. Lead Counsel requests reimbursement of $57,048.70 in litigation expenses incurred in prosecuting this Action – lower than what was stated in the Notice.

Lead Counsel undertook this litigation with the understanding that its expenses would be reimbursed only if Plaintiff and the class achieved a monetary recovery. This structure provided no incentive to incur unnecessary costs—and none were incurred. All expenses were reasonably and necessarily expended in prosecuting this case. ¶45. The majority of these costs were for essential services: private investigators, a financial/damages expert, mediator fees, and class notice. ¶41. The remaining expenses consisted primarily of court filing fees, pro hac vice fees, online legal research, travel, and other routine litigation costs. *Id.* Courts consistently hold that these categories of expenses are properly charged to the settlement fund. See, e.g., *Katz*, 2013 WL 11237202, at *8; *LJ Int'l, Inc.*, 2009 WL 10669955, at *8 (approving reimbursement for "research, travel, photocopying, and experts" as reasonable and typical); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (granting

reimbursement for experts, investigators, travel, filing costs, photocopies, and online research as reasonable and necessary); *Immune Response*, 497 F. Supp. 2d at 1177. These are the same types of expenses routinely billed to fee-paying clients and, therefore, should be paid from the common fund. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

## V.   THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFF

The Court should also approve the requested $2,500 award to Plaintiff as compensation for the time and effort he devoted to representing the Settlement Class. The Notice expressly informed Settlement Class Members that Plaintiff would seek this award. Bravata Decl., Exs. A, B, and D. To date, no objections have been raised. *Id.*, ¶15.

The PSLRA authorizes courts to reimburse lead plaintiffs for reasonable costs and expenses related to the representation of the class. 15 U.S.C. § 78u-4(a)(4); see H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) (recognizing that lead plaintiffs should be compensated for reasonable costs and expenses associated with service). Such awards serve an important purpose: they compensate class representatives for work performed on behalf of the class, acknowledge the financial and reputational risks they assume, and recognize their willingness to act as private attorneys general. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) ("Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives.").

Throughout this litigation, Plaintiff consistently made himself available to Lead Counsel and fulfilled his responsibilities with diligence and care. His efforts included, among other things: (1) researching and selecting law firms to serve as lead counsel; (2) reviewing complaints and other pleadings; (3) discussing and evaluating the responsibilities of serving as lead plaintiff; (4) maintaining regular communication with counsel regarding case developments; (5) gathering and producing information

16

concerning his investment in EHang; and (6) assessing settlement scenarios and evaluating the proposed resolution. Ex. 2.

As reflected in his declaration, Plaintiff was actively engaged and carried out his duties faithfully. These activities are precisely the type of efforts courts recognize as warranting reimbursement for the time and commitment expended on behalf of the Settlement Class.

Courts in this Circuit routinely award representative plaintiffs in similar or greater amounts. *See, e.g., Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) ($10,000 each to lead plaintiffs); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000); *Jenson,* 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) ($10,000 reimbursement to lead plaintiffs); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) ($10,000 award to plaintiff).

Plaintiff devoted time and effort to faithfully representing the interests of the Settlement Class. The requested award is modest, fully justified by Plaintiff's active participation, and should be approved as reasonable compensation for his service.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court award: (i) attorneys' fees of 25% of the Settlement Amount together with interest thereon; (ii) reimbursement of expenses of $57,048.70; and (iii) $2,500 to Zhang for his service as a lead plaintiff.

Dated: December 12, 2025          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Yu Shi*
Yu Shi (*pro hac vice*)
275 Madison Ave, 40th Floor
New York, NY 10016

17

Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: yshi@rosenlegal.com

Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff and the Settlement Class*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 5,916 words, which complies with the word limit of L.R. 11-6.1.

Date: December 12, 2025

/s/ Yu Shi

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of December, 2025, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Yu Shi*
Yu Shi