UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title       Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

Present:  The Honorable:      Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (In Chambers) Order GRANTING Plaintiff's motion for final approval of class action settlement (Dkt. [85]) and attorney's fees and costs (Dkt. [86]).** <mark>JS-6</mark>

Before the Court are two unopposed motions brought by Plaintiff Zhan Kui Zhang ("Plaintiff"), individually and on behalf of all others similarly situated.  First, Plaintiff moves for an order granting final approval of the class action settlement ("Approval Motion").  Dkt. # 85-1 ("*Mot.*").  Second, Plaintiff moves for approval of class counsel fees, cost reimbursement, service payment, and administration costs ("Fee Motion").  Dkts. # 86-1 ("*Fee Mot.*").  Defendants EHang Holdings Limited ("EHang") and Huazhi Hu (collectively, "Defendants") did not oppose.  *See* Dkt.  Plaintiff also filed the Declaration of Yu Shi and other supporting exhibits in support of its Fee Motion, Dkt. # 87 ("*Shi Decl.*"), and a reply brief reiterating the arguments in both motions, Dkt. # 88.  The matter came on for hearing on January 9, 2026.  Having considering the papers filed and oral argument presented at hearing, the Court **GRANTS** the Motion.

I.      Factual and Procedural Background

On December 4, 2023, Damien Pujo initiated this putative securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired the publicly-traded American Depository Shares ("ADS") of EHang between March 29, 2022 and November 6, 2023, both dates inclusive, and who were damaged thereby.  Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

# 1.  On August 12, 2024, the Court appointed Zhan Kui Zhang as Lead Plaintiff and the Rosen Law Firm, P.A., as Lead Counsel.[1]  Dkt. # 33.

In the FAC, Lead Plaintiff generally alleged that Defendants made materially false and misleading statements regarding pre-orders for autonomous aerial vehicles ("AAVs") placed by two of EHang's largest customers: United Therapeutics Corporation ("United") and Prestige Aviation ("Prestige").  Dkt. # 41 ("*FAC*").  As to Prestige, Lead Plaintiff alleged that investors suffered damages when EHang's ADS price dropped in response to the release of a report from Hindenburg Research revealing that the actual preorders of from Prestige to EHang was for 12 AAVs, not 100.  *FAC* ¶ 6.

Lead Plaintiff's FAC asserted two causes of action against EHang and/or individuals who are present and former officers and directors of EHang for (1) violations of the Securities Exchange Act of 1934 ("Exchange Act") Sections 10(b) and Rule 20b-5, promulgated thereunder by the United States Securities and Exchange Commission ("SEC"), against all defendants, *id.* ¶¶ 138–147, and (2) violations of section 20(a) of the Exchange Act against the individual defendants, *id.* ¶¶ 148–152.  On March 26, 2025, the Court dismissed the claim regarding the United pre-order, so only the Prestige pre-order claim remained.  Dkt. # 59.

On July 1, 2025, Plaintiff and Defendants (collectively, "the parties") engaged in arm's-length negotiations guided by an experienced and nationally recognized mediator, Robert A. Meyer of JAMS, including a full-day, in-person mediation.  Dkt. # 79 ("*Stipulation*"), 3:1-12. The parties accepted Mr. Meyer's mediator's proposal.  *Id.*  On July 7, 2025, the parties filed a notice of settlement with the Court that the parties reached an agreement in principle.  Dkt. # 77.  On August 11, 2025, the parties, in good faith following arm's-length bargaining, entered a Stipulation of Settlement ("Stipulation") that states all the terms of the Settlement and constitutes resolution of this matter by the parties.  *Stipulation* ¶ 12.17.

On August 12, 2025, Plaintiff filed an unopposed Motion for Preliminary Approval of the Class Action Settlement.  Dkt. # 80.  On September 17, 2025, the Court entered a preliminary approval order ("PAO") that initially approved the Settlement

---

[1] The Court ascribes all capitalized terms not otherwise defined herein with the same meanings as used in the Stipulation, Dkt. # 79.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

Agreement.  Dkt. # 83 ("*PAO*").  On December 12, 2025, Plaintiff filed both the Approval Motion and the Fee Motion.

    A.    <u>Overview of Stipulation of Settlement</u>

The key terms of the Stipulation of Settlement are as follows:

    i.    *Settlement Class*

The Stipulation defines the Settlement Class as: "all Persons who purchased or otherwise acquired the publicly traded American Depositary Shares of EHang between March 29, 2022 and November 6, 2023 [the "Class Period"], both dates inclusive, and who were damaged thereby."  *Stipulation* ¶ 1.32.[2]

    ii.    *Settlement Fund*

Under the Stipulation, Defendants agree to pay $1,985,000 (the "Settlement Amount") into the Settlement Fund, which is an escrow account managed by an escrow agent.  *Id.* ¶¶ 1.31, 1.34, 2.1, 3.1–3.4.  The Settlement Fund includes taxes and tax expenses, administrative costs, Lead Counsel's attorneys' fees and reimbursement of expenses, payment to Lead Plaintiff for reimbursement of his time and expenses, and the cost of distributing the balance of the Settlement Fund to Authorized Claimants (any Settlement Class Member whose claim for recovery has been allowed).  *Id.* ¶¶ 1.19, 1.34, 3.4, 7.2, 8.  The amount to be distributed to the Class Members after these deductions is the Net Settlement Fund.  *Id.* ¶ 1.19.

The parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1.  *Id.* ¶ 4.1.  Lead Counsel will be

---

[2] Excluded from the Settlement Class are:

    (a) Persons who suffered no compensable losses, and (b) Defendants; the present and former officers and directors of EHang at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which EHang, or any person excluded under this subsection (b), has or had a majority ownership interest at any time. Also excluded from the Settlement Class are those Persons who file valid and timely requests for exclusion in accordance with the Preliminary Approval Order.

*Stipulation* ¶ 1.32.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                        Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

designated as the administrator for purposes of making necessary tax elections, filings, and ensuring all taxes and related expenses are paid from the fund.  *Id* ¶ 4.1(a).   All taxes arising out of income earned by the settlement fund shall be paid out of the settlement fund.  *Id*. ¶ 4.1(b).  The Escrow Agent must withhold sufficient funds from distribution to Authorized Claimants to pay taxes or tax expenses as required.  *Id*.  All parties commit to cooperating to fulfill these requirements.  *Id*.

    *iii.*   *Administrative Costs*

    To pay administrative costs, the Escrow Agent may, without further approval from Defendants or the Court, disburse at the direction of Lead Counsel up to $150,000 from the settlement fund prior to the Effective Date of the Stipulation.  *Id.* ¶¶ 3.4, 10.5 (defining Effective Date as last in time of series of events, including dismissal of case and entry of final judgment).  After the Effective Date, an additional $50,000 may be transferred from the Settlement Fund to pay for any reasonable and necessary administrative costs without further order of the Court.  *Id.* ¶ 3.4.  The Escrow Agent shall also invest the Settlement Fund in short term instruments and reinvest the proceeds as they mature.  *Id*. ¶ 3.2.

    *iv.*   *Exclusion and claims procedures*

    Class Members who wish to exclude themselves from the settlement class must mail to the Claims Administrator a signed, sworn letter with (1) their contact details, (2) their trading history (the date, number of shares and dollar amount of each EHang ADS purchase during the Class Period, and any sale transactions), and (3) the number of shares of EHang ADS held as of the opening of trading on March 29, 2022 and the close of trading on February 4, 2024.  *Id*. ¶ 5.1; *id.* Ex. A-1, p. 12.   A request for exclusion must be submitted with documentary proof of each purchase and, if applicable, supporting documents proving ownership.  *Id.*

    To share in the Settlement Fund, each class member must submit a Claim Form either by filling out the form on the settlement website or by mailing the form with supporting documentation to the Claims Administrator.  *Stipulation*, Ex. A-1, p. 11.  The claim form is a nine-page document consisting of a proof of claim and release form, *id.* 1-2; claimant's statement, *id.* 3-5; claimant's personal and contact information, *id.* 6; schedule of transactions in EHang ADS, *id.* 6–7; a substitute form W-9, *id.* 7; signature page, *id.* 8, and checklist of tips to submit the claim, *id.* 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                          Date: January 12, 2026

Title     Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

      *v.*    *Individual distribution: Plan of Allocation*

      As to the individual class settlement payment calculations, the plan in the Long Notice provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their transactions in EHang ADS during the Class Period, based on when and at what price they purchased, acquired, and/or sold EHang ADS. *Id.*, Ex. A-1, 7–11. Class members will receive a *pro rata* share of the fund based on the Plan of Allocation, which is defined in the Long Notice itself and not in the Settlement Agreement. *See id.*, Ex. A-1, 7–8. Each class member's funds will be determined as follows:

      Each Authorized Claimant shall be allocated a pro rata share of the Net Settlement Fund based on his, her or its Recognized Loss Amount as compared to the total Recognized Losses of all Authorized Claimants. *Id.* 8. For EHang ADSs purchased during the Class Period, Recognized Losses will be calculated as follows:

A. For ADSs sold on or before November 6, 2023, the Recognized Loss Amount per ADS shall be $0.

B. For ADSs sold between November 7, 2023 and February 4, 2024, inclusive, the Recognized Loss Amount shall be the lesser of: (i) $1.89 per ADS; or (ii) the difference between the purchase price per ADS and the average closing price per ADS as of date of sale provided in Table A [].

C. For ADSs retained at the end of trading on February 2, 2024, the Recognized Loss Amount shall be the lesser of: (i) $1.89 per ADS; or the difference between the purchase price per ADS and $15.04 per ADS.

*Id.*, Ex. A-1, ¶¶ 8–9. No distribution will be made to any claimants who would receive less than ten dollars. *Id.* 7. Recognized Loss will average $0.10 per share, after deduction of attorneys' fees and expenses, if all class members participate. *Stipulation*, Ex. A-1, 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                Date: January 12, 2026

Title       Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

       *vi.*    *Release of claims*

The Stipulation defines the "Released Parties" as:

> Defendants, Conor Chia-Hung Yang, Richard Jian Liu, Xin Fan, and each and all of their respective Related Parties,[3] their respective families, parent entities, associates, affiliates or subsidiaries, and each and all of their respective past, present or future officers, directors, stockholders, agents, representatives, employees, attorneys, financial or investment advisors, advisors, consultants, accountants, investment bankers, commercial bankers, trustees, engineers, insurers, co-insurers and reinsurers, heirs, executors, general or limited partners or partnerships, personal or legal representatives, estates, administrators, predecessors, successors and assigns.

*See Stipulation* ¶ 1.28.  The Stipulation releases the released class claims as follows:

> [A]ny and all Claims and Unknown Claims that have been or could have been asserted or could in the future be asserted in any forum by or on behalf of any of the Releasing Parties, in any capacity, whether known or unknown, whether foreign or domestic, whether arising under federal, state, common, or foreign law, whether based on statements or omissions made directly to individual persons or broadly to the market, which arise out of, are based upon, or relate in any way to the purchase, acquisition, sale, or disposition of any EHang ADS during the Class Period, including but not limited to any claims alleged in the Action and any claims related to the allegations, facts, transactions, events, matters, occurrences, acts, disclosures, oral or written statements, representations, omissions, failures to act, filings, publications,

---

[3] "Related Parties" refers to, with respect to each Released Party:
> the immediate family members, employees, officers, directors, attorneys, legal representatives, insurers, reinsurers, and agents of each of them, and any person or entity which is or was related to or affiliated with any Released Party or in which any Released Party has a controlling interest, and their present and former parents, subsidiaries, variable interest entities, divisions, affiliates, employees, officers, directors, attorneys, legal representatives, accountants, insurers, reinsurers, and agents, and the predecessors, heirs, administrators, successors and assigns of the foregoing.

Stipulation 1.26.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

disseminations, press releases, or presentations involved, related to, set forth,
alleged or referred to in the Action. Notwithstanding the foregoing,
"Released Claims" does not include claims to enforce the terms of this
Stipulation or orders or judgments issued by the Court in connection with
this Settlement.

*Id.* ¶¶ 1.27, 2.2.

> vii.    Cy Pres *Distribution*

If all conditions of the Stipulation are satisfied and final judgment is entered in this
action, no portion of the Settlement Fund will be returned to Defendants. *Id.* ¶ 7.4. The
Stipulation states that any funds remaining in the Net Settlement Fund "shall be donated
to a non-profit charitable organization(s) selected by Lead Counsel and approved by the
Court." *Id.*, Ex. A-1, p.8. At the Final Approval Hearing, Lead Counsel stated the parties
will identify a *cy pres* recipient in the unlikely event the parties need to file a motion for
distribution.

> B.    Class Notice and Procedure

In compliance with the PAO and Stipulation, Strategic Claims Services ("SCS"), a
class action administration firm, was appointed as the Settlement Administrator to
supervise and administer the notice procedure and processing of claims in this case. *See
generally* Dkt. # 87-1 ("*Bravata Decl.*"). As of the Motion filing date, 42,824 notices of
the Settlement – either in the form of a mailed Postcard Notice or an emailed link to the
Long Notice – had been sent to potential Settlement Class Members. Dkt. # 87-1
("*Bravata Decl.*") ¶ 9. Out of the 8,078 Postcard Notices mailed, 258 were returned as
undeliverable. *Id.* ¶ 10. Of these, the United States Postal Service provided forwarding
addresses for 49, and SCS immediately mailed another Postcard Notice to the updated
addresses. *Id.* The remaining 209 Postcard Notices returned as undeliverable were "skip
traced" to obtain updated addresses, and 81 were re-mailed to updated addresses. *Id.*
The Summary Notice was published electronically over *GlobeNewswire*. *Id.* ¶ 11. SCS
maintained a toll-free telephone number that potential Settlement Class Members may
call to obtain information about the Settlement and/or request copies of the Long Notice
and Claim Form, and SCS has promptly responded to each telephone inquiry. *Id.* ¶ 12.
SCS also established a webpage, www.strategicclaims.net/EHang, containing important
case documents and other information. *Id.* ¶ 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title     Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

As of the date Plaintiff filed the Reply, 1,047 valid claims were submitted. Dkt. # 88-1 ("Supp. Bravata Decl.") ¶ 9. As such, the Settlement represents an average recovery of $1,895.89 per claimant, though the amount will vary depending on when the claimant bought or sold EHang ADSs and the prices at those times. *Reply* 5, n.5.

In response to the notice program, Lead Counsel represented at the Final Approval Hearing that the Claims Administrator has received no objections to, or requests for exclusion from, the Settlement. *See id.*, ¶¶ 14-15. The Court likewise received no mailed objections or notices of intention to appear at the Final Approval Hearing, and no appearances, objections, or requests for exclusion were made at hearing.

II.     Final Settlement Approval

    A.     Legal Standard

A court may finally approve a class action settlement "only after a hearing and only on finding that [the settlement] . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

> In determining whether a settlement is fair, reasonable, and adequate, the court must balance a number of factors: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Id.*; *see also Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

Additionally, under Rule 23(e), the Court must "scrutinize the fee arrangement for potential collusion of unfairness to the class" by analyzing three factors: (1) whether

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                          Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

counsel "receive[d] a disproportionate distribution of the settlement;" (2) whether the
parties agreed to a "clear sailing arrangement;" and (3) whether the settlement includes a
"kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023, 1026 (9th
Cir. 2021).

       The district court must approve or reject the settlement—as a whole—after
comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the
settlement taken as a whole, rather than the individual component parts, that must be
examined for overall fairness."). The court may not delete, modify, or rewrite provisions
of the settlement. *See id.* A court should be cognizant that a settlement "is the offspring
of compromise; the question . . . is not whether the final product could be prettier, smarter
or snazzier, but whether it is fair, adequate and free from collusion." *Id.* at 1027. In
determining whether a proposed settlement should be approved, the Ninth Circuit has a
"strong judicial policy that favors settlement, particularly where complex class action
litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

       B.     Class Certification

       As a threshold matter, final approval of a class action settlement requires an
assessment of whether the class satisfies the requirements of Federal Rules of Civil
Procedure 23(a) and (b). *Hanlon.*, 150 F.3d at 1019–22. Plaintiff represents that
"[n]othing has transpired since" the Court issued the PAO "that would disturb the Court's
findings" therein. Defendants do not dispute this contention, and no objections were
made at the Final Approval Hearing.

       Because no facts that would affect these requirements have changed since the
Court preliminarily approved the Class on September 17, 2025, this Order incorporates
by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order
granting preliminary approval. *See PAO* 9–14; *Fleming v. Impax Labs. Inc*., 2022 WL
2789496, at *4 (N.D. Cal. July 15, 2022) (incorporating by reference class certification
analysis from preliminary approval order where no facts had changed).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

---

C.    <u>The Settlement</u>

  i.    *Hanlon Factors*

    a.    *Strength of Plaintiffs' Case and the Risk, Expense,
          Complexity, and Likely Duration of Further Litigation and
          Class Certification*

"The first and second [*Hanlon*] factors require the Court to consider the strength
of the Plaintiffs' case on the merits balanced against the amount offered in the settlement
and the risks of further litigation." *Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-
JSC, 2022 WL 425559, at *4 (N.D. Cal. Feb. 11, 2022) (quotations and citation omitted).
The Court considers the risk of continuing litigation, including the strengths and
weaknesses of Plaintiffs' case on the merits, balanced against the certainty and
immediacy of recovery from the Settlement Agreement. *See In re Mego Fin. Corp. Sec.
Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  There is no "particular formula by which th[e]
outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.
2009).  Rather, the Court's assessment of the likelihood of success is "an amalgam of
delicate balancing, gross approximations and rough justice." *Id.* at 965 (internal
quotation marks and citation omitted).  "In reality, parties, counsel, mediators, and
district judges naturally arrive at a reasonable range for settlement by considering the
likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of
obtaining it, discounted to a present value." *Id.*  "In most situations, unless the settlement
is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive
litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221
F.R.D. 523, 526 (C.D. Cal. 2004) (quotation marks and citation omitted).

As Plaintiff and Lead Counsel identify, Plaintiff faces substantial challenges in
proving falsity, loss causation, and damages. *Mot.* 8; *see* Dkt. # 87 ("*Shi Decl.*") ¶ 25.
The sole remaining claim—the Prestige Claim—asserts that EHang overstated the size of
Prestige's pre-order. *Mot.* 8.  To establish falsity, Plaintiff must show that EHang
misrepresented the number of AAVs Prestige agreed to purchase. *Id.*  Although Plaintiff
prevailed at the pleading stage, Defendants would be entitled to present evidence
rebutting this claim at summary judgment. *Id.*  During settlement negotiations, including
mediation, Plaintiff's counsel reviewed confidential information indicating significant
hurdles to defeating such a motion. *Shi Decl.* ¶ 25.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                      Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

Additionally, discovery would have been "particularly lengthy, complex, and costly," because as Defendants have asserted, Chinese law will affect the export of documents and data from China.  *Mot.* 9, citing Dkt. # 76, 9.  For the same reason, assuming Plaintiff obtained a judgment, enforcing it against defendants in China would present unique challenges.  *Mot.* 10-11.

Considering the risks and costs of continued litigation, the immediate reward to the Settlement Class is preferable.  *See Rodriguez*, 563 F.3d at 966 (risks in litigating weigh in favor of approving a class settlement); *Catala v. Resurgent Capital Servs. L.P.*, No. 08C-V-2401 NLS, 2010 WL 2524158, at *3 (S.D. Cal. Jun. 22, 2010) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").  Accordingly, the Court finds that the first and second *Hanlon* factors weigh in favor of approval.

   *b. Risk of Maintaining Class Action Status Through Trial*

Because the Class was certified for settlement purposes, *PAO* 11, the risk of maintaining class action throughout trial is not squarely relevant here.  *See In re Biolase, Inc. Sec. Litig.*, No. SACV 13-1300-JLS-FFMX, 2015 WL 12697736, at *7 (C.D. Cal. Jun. 5, 2015) (not considering this factor where no specific risks to maintaining class action status throughout the litigation were apparent).  However, had Plaintiff prevailed in a certification motion, the risk of decertification would remain.  The Settlement avoids these risks to the benefit of the Settlement Class.  *LinkedIn*, 2023 WL 8631678, at *6.  Accordingly, this factor supports final approval.

   *c. Amount Offered in Settlement*

The fourth factor in assessing the fairness of the proposed settlement is the amount of the settlement.  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice*, 688 F.2d at 624 (internal quotations omitted).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators."  *Id.* at 625.  "Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation."  *Contreras v. Armstrong Flooring, Inc.*, No. CV 20-3087 PSG (SKx), 2021 WL 4352299, at *5 (C.D. Cal. Jul. 6, 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

Plaintiff's expert estimated Defendant's maximum liability as approximately $23,000,000. *Mot.* 14. However, Plaintiff notes the total liability is likely significantly lower. *Id.* In the FAC, Lead Plaintiff alleged that investors suffered damages when EHang's ADS price dropped in response to the release of a report from Hindenburg Research, which revealed that Prestige had only preordered 12 AAVs from EHang, and not 100. *FAC* ¶ 6. But the Hindenburg Report alleged multiple instances of fraud by EHang, not just the Prestige pre-order inflation, which was the sole remaining claim in this lawsuit. *Mot.* 14.

Even taking the full estimated $23,000,000 as Defendants' maximum liability, the Settlement Amount of $1,985,000 represents 8.6% of the estimated damages for the Class. This falls within the range of other securities class action settlements with similar total damages. *See In re Regulus Therapeutics Inc. Sec. Litig.*, Nos. 3:17-cv-182-BTM-RBB, 3:17-cv-267-BTM-RBB, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); *In re Snap Sec. Litig.*, No. 2:17-cv-03679-SVW, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-cv-01828-H-LL, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (approving recovery of 3.49% of damages); *In re Celera Corp. Sec. Litig.*, No. 5:10–CV–02604–EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015), at *6 (approving recovery of 5.5% of plaintiffs' estimated losses).

Additionally, there were no objections to the settlement made to either SCS or to the Court at the Final Approval Hearing.

The Court is satisfied that Defendant's reasonable exposure was appropriately reduced, and that the risks of ongoing litigation have been weighed against the recovery that the Settlement Agreement provides for the Settlement Class. *See Catala*, 2010 WL 2524158, at *3; *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"). Thus, this factor favors of approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

*1.    Administrative Costs*

At this juncture, the Court addresses its concern stated in the PAO regarding Paragraph 3.4 of the Stipulation, which sets aside up to $200,000 for costs and expenses to the Settlement Administrator.  *PAO* 20.  This reduces the entire settlement amount by nearly 10%.  The Court noted that this amount is significant and was not addressed in the motion for preliminary approval.  *Id.*

For final approval, Plaintiff submits a declaration from the president of SCS breaking down the administrative services encompassed in the administrative fees and costs.  *See Shi Decl.*, Ex. 7 (Mulholland Decl.) ¶¶ 3-7.  Mr. Mulholland attests that the fees include the administrator's time, labor, notice costs, broker charges, distribution charges, maintenance of the settlement phone and website, consulting services, two years' of income tax preparation and filing, and other costs. that will total approximately $145,960 and will be capped at $150,000.  *Id.* ¶ 6.

In the absence of objections to the administrative costs, and in light of Plaintiff's and SCS's representations that the costs are necessary to effectuate the Settlement, the Court does not find the administrative costs bar Settlement approval.

*d.    Extent of Discovery Completed and State of the Proceedings*

This *Hanlon* factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459.  The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases," and the more heavily this factor weighs in favor of final approval.  *Young v. Polo Retail, LLC*, No. C 02-4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (internal quotation marks omitted).

Discovery was stayed because of the PSLRA-mandated discovery stay.  *Mot.* 16. Plaintiff avers that Lead Counsel performed an extensive investigation prior to filing the amended complaint, including an exhaustive review of public sources and retaining investigators to interview witnesses; briefed EHang's motion to dismiss; and consulted with a loss causation and damages expert.  *Id.*  This informal discovery permitted Lead Counsel and Plaintiff to make an informed decision concerning the Settlement.  *See Schneider v. Champignon Brands Inc.*, No. CV21-3120 JVS (KESx), 2022 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

22879587, at *12 (C.D. Cal. Nov. 1, 2022) (noting "Plaintiff had sufficient information to make an informed decision" despite no formal discovery due to PSLRA discovery stay). The parties also conducted settlement negotiations with the assistance of a mediator, which gives the Court further reason to conclude the parties possessed "a clear view of the strengths and weaknesses of their cases." *Young*, 2007 WL 951821, at *4.

The time and effort spent on discovery and mediation weigh in favor of granting final approval.

### e.    Experience and Views of Counsel

The Court considers the experience of counsel, because "[t]hey are the ones who are most closely acquainted with the facts of the underlying litigation." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Lead Counsel, referring to the Rosen Law Firm, has experience litigating securities class actions, which are "notoriously complex." *Mot.* 17 (collecting cases where courts have recognized Lead Counsel's experience in securities class actions); *see Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain."). Defense Counsel (Cooley LLP) are also experienced securities litigation practitioners. *Mot.* 17. The parties reached settlement only after Lead Counsel vigorously and comprehensively investigated the class claims. *Id.* Lead Counsel relied on their extensive experience when negotiating the proposed settlement and throughout the duration of the litigation. *Id.*

The Court finds that Lead Counsel has adequately represented the proposed settlement class, which weighs in favor of final approval.

### f.    Presence of a Government Participant

Because there is no government entity directly participating in the case, this factor is not relevant.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

g.      *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement.  *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), overruled on other grounds by *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *DIRECTTV, Inc.*, 221 F.R.D. at 528–29 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."); *see also Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Here, out of 42,824 notices that have been sent to potential Settlement Class Members, no Settlement Class Member objected to the Settlement terms or opted out. *Bravata Decl.* ¶¶ 9, 15.  Nor were there any objections at the Final Approval Hearing.

The Court finds that the complete absence of any negative reaction weighs in favor of final approval.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (absence of a negative reaction weighs in favor of approval).

ii.      *Balancing the Hanlon Factors*

Having considered the *Hanlon* factors, the Court finds all relevant factors favor final approval.

D.      *Briseño* Factors

In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel has pursued their own self-interests in the negotiations.  *See* 998 F.3d at 1023.  The court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (1) if class counsel receives a disproportionate distribution of the gross settlement amount; (2) if there is a "clear-sailing" agreement; and (3) if any of the gross settlement amount reverts to the defendant.  *See id.*  The Court discusses each "red flag" in turn.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

---

      *i.*    *Disproportionate Distribution of the Settlement*

One sign that class counsel pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the common settlement fund. *See id.* at 1023.  For example, in *Briseño*, the Circuit found that class counsel's receipt of $5.85 million of the $8 million gross settlement fund raised red flags, particularly because the class received less than $1 million.  *See id.* at 1020.

Here, Lead Counsel seeks $496,250, or 25%, of the Settlement Amount, plus interest.  *Fee Mot.* 1.  In the Ninth Circuit, the benchmark for a reasonable fee award in common-fund cases is 25% of the recovery obtained.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Courts must "justify any increase or decrease from this amount based on circumstances in the record."  *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 455 (E.D. Cal. 2013) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).

After examining the attorneys' fees Plaintiff seeks compared to the number of hours worked and the stated hourly fee, the Court does not find Lead Counsel's fee request to be disproportionate.  The Court discusses this issue further when analyzing Plaintiffs' approval request for attorneys' fees.  *See infra* Section III.

Because Lead Counsel did not receive a disproportionate distribution of the Settlement Amount, this factor does not raise a red flag regarding the Settlement Agreement.

      *ii.*    *Presence of a "Clear-Sailing Arrangement"*

A settlement agreement contains a "clear-sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee."  *Briseño*, 998 F.3d at 1023.  The mere presence of such an agreement is not "an independent basis for withholding settlement approval."  *Id.* at 1027.  Instead, such arrangements are material only if there is evidence of at least one of the other two *Briseño* factors: reverters, and unreasonably high attorneys' fees.  *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[A] clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." (citation omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

The Stipulation contains a clear sailing arrangement.  *See Stipulation* ¶ 8.1 ("Defendants shall take no position with respect to the Fee and Expense Application."). However, the potential for collusion stemming from the arrangement is offset because (1) the attorneys' fees are not excessively high, and (2) the Stipulation does not contain a reverter clause.  *See id.* ¶ 7.4 ("…if all conditions of the Stipulation are satisfied and the Final Judgment becomes Final, no portion of the Settlement Fund will be returned to Defendants.").

Thus, this factor only weakly indicates collusion or inappropriate self-interest.  *See Briseño*, 998 F.3d at 1027.

### iii.  *Presence of a Reversionary Clause*

A reversionary clause is one that "returns unawarded fees to the defendant, rather than the class."  *Id.* at 1023.  As discussed, there is no reversionary clause in the Settlement Agreement.  *See Stipulation* ¶ 7.4.  Accordingly, this factor does not indicate collusion.

### iv.  Briseño *Conclusion*

The Court, having considered each of the *Briseño* factors, finds that the Settlement Agreement, on balance, was neither collusive nor based on inappropriate self-interest of Lead Counsel.

### E.    Remaining Rule 23(e)(2) Factors

### i.    *Effectiveness of Distributing Relief*

Rule 23(e)(2)(C)(ii) requires consideration of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

The Claim Form requires Settlement Class Members to provide information necessary to calculate their claims pursuant to the Plan.  *Mot.* 11.  During the claim review process, SCS, under Lead Counsel's guidance, will allow claimants an opportunity to cure any deficiencies in their claims or request the Court review a denial of their claim(s), and, lastly, send Authorized Claimants their pro rata share of the Net Settlement Fund after Court approval.  *Id.*  The claims processing method proposed here

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                          Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

is standard in securities class action settlements.  *See Oh v. Hamni Fin. Corp.*, No. 2:20-CV-02844-FLA (JCX), 2024 WL 3435259, at *5 (C.D. Cal. Mar. 19, 2024*)* (approving claims processing method where those who "do not opt-out timely will receive a pro rata share of the net settlement amount relative to their losses—no other action needs to be taken by class members, and there is no risk of unjustified claims.").

The Court finds the proposed method of distributing relief to the class will be effective.

*ii.     Settlement Class Members are Treated Equitably*

Rule 23(e)(2)(D) requires courts to evaluate whether the Settlement treats class members equitably relative to each other.

The allocation plan provides no preferential treatment to Plaintiff and distributes funds on a *pro rata* basis to each Settlement Class Member who timely submits a valid claim based on recognized losses resulting from the stock price decline during the Class Period.  *Mot.* 12–13; *see supra* Section I.A.v.  Courts have approved similar plans that allocate funds on a *pro rata* basis to claimants based upon the timing of their purchases and sales and corresponding share prices.  *See, e.g.*, *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11–00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.") (quotation omitted).

For these reasons, this factor supports approval of the proposed Settlement.

F.      Final Approval Conclusion

Having concluded that the *Hanlon* and additional Rule 23(e)(2) factors favor final approval, and that the Settlement Agreement is appropriate under *Briseño*, the Court **GRANTS** Plaintiff's motion for final approval of the Settlement.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                      Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

III.    Attorneys' Fees, Costs and Incentive Awards

Plaintiff moves for (1) attorneys' fees equal to 25% of the Settlement Amount ($496,250); (2) reimbursement of litigation expenses in the amount of $57,048.70; and (3) a service award of $2,500 to Plaintiff, all to be paid from the Settlement Fund.  The Court addresses each request in turn.

A.    Attorneys' Fees

Rule 23 permits a court to award "reasonable attorneys' fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  The court "must carefully assess" the reasonableness of the fee award.  *See Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003); *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action case, the court must scrutinize a request for fees when the defendant has agreed to not oppose a certain fee request as part of a settlement).  Courts can determine the reasonableness of a request for attorneys' fees using either the lodestar method or the percentage-of-recovery method.  *See Allison*, 8 F.4th at 1180.  "Though courts have discretion to choose which calculation method they use, their discretion must be exercised as to achieve a reasonable result," and the Ninth Circuit recommends "cross-checking their calculations against a second method."  *See In re Bluetooth*, 654 F.3d at 944–45 (deciding courts may use either method to gauge reasonableness while recommending courts cross-check their calculations against a second method).

The Court first analyzes the reasonableness of the request under the percentage-of-recovery method and then cross-checks it against the lodestar method.

i.    *Percentage-of-Recovery Method*

Under the percentage-of-recovery method, courts typically use 25% of the fund as a benchmark for a reasonable fee award.  *See id.* at 942.  The percentage can vary, however, and courts have awarded more or less than 25% of the fund in attorneys' fees as they have deemed appropriate.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20% and 30% of the common fund in attorneys' fees).  When assessing reasonableness of fee awards under the percentage-of-recovery theory, courts consider the following factors: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing *Vizcaino*, 290 F.3d at 1048–50).

> a.    *Results Achieved*

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046.

As discussed in Section II(C)(i)(c), the Settlement Amount, taking into consideration the specific risks associated with the remaining claim and proceeding on a class basis, equals roughly 8.6% of the estimated damages for the class, which is within the range for final approval in securities class actions. *Fee Mot.* 4-6. Plaintiff also submits evidence from NERA Economic Consulting that between January 2015 and December 2024, for cases with damages between $20,000,000 and $49,000,000, the median settlement value as a percentage of losses was 5.2%. *See Shi Decl.*, Ex. 4, Fig. 23. In 2024, the median recovery in securities class actions was approximately 1.2%. *Id.*, Fig. 24. Thus, the recovery here compares favorably to recoveries in similar securities class action settlements.

The Court concludes the result achieved on behalf of the class members supports the requested fees.

> b.    *Risk of Litigation*

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *Omnivision*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048 (discussing that "[r]isk is a relevant circumstance" in determining an attorney fee award in a common fund case). Plaintiff, and by extension Lead Counsel, would have faced substantial obstacles were they to continue litigating this matter. *See supra* Sections II(C)(i)-(ii).

In light of the risks associated with this litigation, the result achieved for the Settlement Class supports the requested fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                          Date: January 12, 2026

Title      Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

### c.      *Skills Required and Quality of Work*

The Court also considers the skills required to prosecute and manage this litigation and Lead Counsel's overall performance.  *See Omnivision*, 559 F. Supp. 2d at 1047. Here, Lead Counsel demonstrates that they have considerable experience in litigating securities class actions.  *Shi Decl.* ¶ 26, Ex. 3 (Lead Counsel resumes).  Lead Counsel avers that that they utilized their experience to undertake an extensive, cross-border investigation, overcame a motion to dismiss, and secure an advantageous Settlement through mediation and negotiations.  *Fee Mot.* 7-9.

The Court agrees that Lead Counsel has experience in securities class action litigation resulting in approved settlements or class certification, *see id.* 8, so this factor tips in favor of granting counsel's request.

### d.      *Contingent Nature and Plaintiff's Financial Burden*

Lead Counsel took the case on a contingency fee basis, advancing funds and spending time without guarantee of recovery.  *Id.* 9-10 ("Lead Counsel risked non-payment of a total of 444.21 hours of professional time worth $481,352.75 as well as incurring expenses of $57,048.70 to bring this case to a successful conclusion").

Since Lead Counsel faced the risk of walking away with nothing, the Court finds that this factor supports approving the motion.

### e.      *Awards Made in Similar Cases*

Lead Counsel seeks an award of 25% of the Settlement Amount, which is the benchmark for reasonable attorneys' fees under the percentage-of-recovery approach. *Pac. Enterprises*, 47 F.3d at 379 (affirming fee of one-third of settlement fund).  Courts in the Ninth Circuit have recognized that "in most common fund cases, the award exceeds the benchmark" and that "this is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds [the] benchmark.").  The case also reached an early resolution, and "[c]ourts in this district typically adhere to this benchmark in cases in which there is little active litigation pre-settlement."  *Schneider*, 2023 WL 11944374, at *9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.    2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

Since counsel requests an award in line with the benchmark for recovery, this factor also supports approving the motion.

The Court finds the percentage-of-recovery method supports Lead Counsel's request and proceeds to conduct a cross-check using the lodestar method.

> ii.    *Lodestar Method Cross-Check*

"The lodestar method is a way for the Court to cross-check the reasonableness of a fee award." *Gutierrez v. Amplify Energy Corp.*, No. 8:21-CV-01628-DOC(JDEx), 2023 WL 6370233, at *6 (C.D. Cal. Sept. 14, 2023); *see Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. In cases where attorney investment of time was "minimal," the lodestar analysis "may convince a court that a lower percentage is reasonable." *Vizcaino*, 290 F.3d at 1050. On the other hand, when the "litigation has been protracted," lodestar may suggest "a higher percentage." *Id.*

The Court has reviewed the timekeeping charts Lead Counsel provided, which list each attorney's name, position, number of hours worked on this case, and hourly rate. *See Shi Decl.* ¶ 37, Ex. A. Lead Counsel asserts that the lodestar is $481,352.75 based on the 444.21 hours that four partners, one counsel, five associates, and one paralegal spent on this case. *See id.*

In requesting $496,250, Lead Counsel requests a multiplier of 1.03. *Id.* Plaintiff's counsel cites numerous decisions from the Ninth Circuit, including this district, that approved multipliers ranging from 2.97 to 6.85. *See Fee Mot.* 14 n.3.

The Court further examines the propriety of Lead Counsel's lodestar value by determining whether the hourly rates and number of hours are reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title       Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

        *a.*    *Reasonable Rates*

"[T]he district court must determine a reasonable hourly rate considering the experience, skill, and reputation of the attorney requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). The fee applicant bears the burden of showing that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (cleaned up). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Courts may also "rely on [their] own familiarity with the legal market." *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Lead Counsel applied hourly rates at $1100-1400 for partners, $975 for counsel, $500-675 for associates, and $250 for paralegals. *Shi Decl.* ¶ 37. To support its proffered hourly rates, Lead Counsel attaches a survey of law firm billing rates for "peer securities class action and complex litigation practitioners," which have been pulled from district court cases nationwide. *Shi Decl.* ¶ 39, Ex. 6. The survey does not solely reflect market rates for attorneys' fees incurred in securities or complex litigation in Los Angeles, which may limit the survey's "relevance in determining reasonable attorneys' fees here." *See Sarabia v. Ricoh USA, Inc.*, No. 8:20-CV-00218-JLS-KES, 2023 WL 3432160, at *7 (C.D. Cal. May 1, 2023) (questioning relevance of matrix with no connection to Los Angeles area).

The Court independently takes judicial notice of the *2024 Real Rate Report: The Industry's Leading Analysis of Law Firm Rates, Trends, and Practices* ("Real Rate Report"), published by Wolters Kluwer. The Real Rate Report identifies attorney rates by location, experience, firm size, areas of expertise and industry, as well as specific practice areas, and is based on actual legal billing, matter information, and paid and processed invoices. *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, 2021 WL 4786889, at *3 (C.D. Cal. Aug. 24, 2021) (turning to the 2020 Real Rate Report "as a useful guidepost to assess the reasonableness of [claimed] hourly rates in the Central District of California"). For litigation hourly rates in Los Angeles, the Real Rate Report documents a range of $548 (first quartile) to $1,268 (third quartile) for partners and $477 (first

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

quartile) to $946 (third quartile) for associates.  *See 2024 Real Rate Report* at 16.  For paralegals, the Real Rate Report provides a general median rate of $229, but the rate is not specific to Los Angeles.  *See id.* at 9.  Thus, Lead Counsel's hourly rates fall within the Real Rate Report guideposts.

The Court finds Lead Counsel's billing rates are in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.

####    *b.      Reasonable Hours*

Next, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (cleaned up).  To satisfy this burden, "[t]he party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  When it considers evidence of the hours worked, "[t]he district court . . . should exclude from this initial fee calculation hours that were not reasonably expended." *Id.* at 434 (cleaned up).  Hours not reasonably expended are those that are "excessive, redundant, or otherwise unnecessary." *Id.*  A district court may reduce hours by either conducting an hour-by-hour analysis or by making an across-the-board percentage cut.  *See $28,000.00 in U.S. Currency*, 802 F.3d at 1106.

The Fee Motion does not break down the number of hours that Lead Counsel worked on each stage of litigation.  *See generally Fee Mot.*, *Shi Decl.* ¶ 37.  Nonetheless, in light of the modest lodestar multiplier of 1.03 and the considerable tasks that Lead Counsel had to undertake in order to reach resolution, *see Shi Decl.* ¶ 24, the Court is satisfied that the number of hours spent is reasonable.

####    *c.      Conclusion*

Lead Counsel requests a multiplier of 1.03, which falls at the low end of the Ninth Circuit's "presumptively acceptable range of 1.0–4.0." *See Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (citing *Vizcaino*, 290 F.3d at 1051 (upholding a 3.65 multiplier)).  The Court's lodestar cross-check thus supports the granting of Lead Counsel's requested attorneys' fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                    Date: January 12, 2026

Title    Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

Having conducted a percentage-of-recovery check and a lodestar cross-check, the
Court finds Lead Counsel's request is reasonable and **GRANTS** attorneys' fees of
$496,250, plus interest.

B.    Litigation Costs

"Attorneys may recover their reasonable expenses that would typically be billed to
paying clients in non-contingency matters." *In re Omnivision*, 559 F. Supp. 2d at 1048
(citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)).

Here, Lead Counsel requests reimbursement of expenses incurred in the amount of
$57,048.70. *Fee Mot.* 15-16; *Shi Decl.* ¶ 41.  The costs include fees for a financial
expert, investigator, legal research, mediation, class notice, travel, lodging and
transportation, service of process, translation, courier and court filings. *Shi Decl.* ¶ 41.

The Court finds the expense amounts Lead Counsel seeks to have reimbursed are
reasonable and necessary. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166,
1177–78 (S.D. Cal. 2007) (granting costs for similar expenses), *Sarabia*, 2023 WL
3432160, at *11 (same).  Thus, the Court **GRANTS** the requested costs.

C.    Incentive Award

Finally, Plaintiff requests an incentive award of $2,500. *Fee Mot.* 16–17.
"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948, 958 (9th Cir. 2009).  Courts have discretion to issue incentive awards to
class representatives. *Id.* at 958-59 (9th Cir. 2009). The awards are "intended to
compensate class representatives for work done on behalf of the class, to make up for
financial or reputational risk undertaken in bringing the action, and, sometimes, to
recognize their willingness to act as a private attorney general." *Id.*  Courts also compare
the incentive awards to the total settlement by looking at "the number of named plaintiffs
receiving incentive payments, the proportion of the payments relative to the settlement
amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litigation*,
779 F.3d 934, 947 (9th Cir. 2015) (quoting *Staton*, 327 F.3d at 977).

Here, Plaintiff was appointed as Lead Plaintiff on August 12, 2024. *Shi Decl.*, Ex.
2 (Zhang Decl.) ¶ 3.  Plaintiff estimates that he has devoted at least 30 hours to this case,
including reviewing the initial complaint and subsequent major filings, researching law

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:23-cv-10165-MWC (DFMx)                   Date: January 12, 2026

Title     Zhan Kui Zhang v. Ehang Holdings Limited *et al.*

firms to serve as lead counsel, discussing the responsibilities associated with serving as lead plaintiff with lead counsel, gathering documents for lead counsel, consulting with lead counsel regarding the mediation, and reviewing settlement documents. *Id.* ¶ 4.

On Reply, Plaintiff estimates that the average payment per Settlement Class Member who had submitted a valid claim (as of the date of the Reply) is $1,895.89, which will vary based on when the claimant bought or sold EHang ADSs and the prices at those times. *Reply* 5. Thus, particularly given the potential variance among claimants, the average payment amount is reasonably similar to the requested award of $2,500.

In light of the submitted declarations, the approximate individual settlement payment, and service payments that have been granted in other cases, Plaintiff's proposed service award appears reasonable. The Court **GRANTS** the requested service award.

IV.    <u>Conclusion</u>

For the foregoing reasons, the Court:

1.    **GRANTS** Plaintiff's Unopposed Motion for Final Approval and approves settlement of the action as set forth in the Stipulation of Settlement as fair, just, reasonable, and adequate and directs the parties to perform their settlement in accordance with the terms set forth in the Stipulation of Settlement;

2.    **GRANTS** an award to Lead Counsel of attorneys' fees equal to 25% of the Settlement Amount ($496,250), with interest, and reimbursement of litigation expenses in the amount of $57,048.70, with interest;

3.    **GRANTS** an incentive award of $2,500 to Plaintiff as the Class Representative; and

4.    **RETAINS JURISDICTION** to enforce the Stipulation of Settlement and resolve any disputes that might arise during its term.

**IT IS SO ORDERED.**

|                          | : |
|--------------------------|---|
| **Initials of Preparer** | TJ |